John P. SIVELL

v.

CONWED CORPORATION.

No. Civ. H–83–1083 (PCD).

United States District Court,
D. Connecticut.

July 31, 1987.

---

**24**

Joel M. Ellis, and Everett F. Fink, West Hartford, Conn., for plaintiff.

Peter W. Benner, John A. Cvarch, Ralph Urban, Shipman & Goodwin, Hartford, Conn., for defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

Plaintiff's amended complaint, filed February 21, 1986, alleges seven claims:

(1) Age discrimination in his discharge.

(2) Breach of contract arising from defendant's discharge.

(3) Breach of implied covenant of good faith arising from his discharge.

(4) Fraud, deceit and misrepresentation arising from his discharge.

(5) Breach of contract arising from the 1980 disciplinary action taken against him.

(6) Violation of good faith arising from the 1980 disciplinary action taken against him.

(7) Fraud on creditors.[1]

### Facts [2]

On August 29, 1980, plaintiff was demoted to salesman from his position as Regional Sales Manager for defendant's ceiling products division. All of plaintiff's work for defendant was in the ceiling products division. On April 15, 1982, plaintiff was discharged. On August 9, 1985, defendant sold its ceiling products division and terminated all the division's sales personnel. According to defendant, had plaintiff re-

---

1. As of this date, the court has granted in part plaintiff's motion to amend his complaint. The nature of the claims of the second amended complaint are not dissimilar to those noted above.

2. The undisputed facts are drawn from the record. Plaintiff's statement of material facts as to which there exists a genuine issue, Local Rule 9(c)(2), does not comply with that rule. Rather, it leaves the undisputed facts in some doubt, stating only that plaintiff's claims in Counts Three through Six have been admitted. A close reading of defendant's statement of material facts as to which there is no dispute, at 6, reveals that defendant disputes a number of plaintiff's allegations. What defendant has admitted is thus taken as not in dispute. What defendant has claimed to be undisputed in its 9(c)(1) statement, without contradiction by plaintiff in reply, Local Rule 9(c)(2), and absent any other suggestion by plaintiff of a dispute is deemed true.

mained in defendant's employ until August 9, 1985, he would have then been terminated. Affidavit of Barbara Haache at ¶ 9; Affidavit of Eugene Santi at ¶ 10.

At his demotion, plaintiff complained of defendant's failure to comply with personnel procedures and initially refused reassignment as a salesman. He only later accepted, after he had spoken with defendant's chief operating officer and resolved a number of issues. Plaintiff claims an implied contract existed "[a]t the time of [his] discharge" based on defendant's "Personnel Policy and Procedure, Management Guide" ("Manual") and that defendant violated this contract. The pertinent version of that Manual pertaining to "Terminations of Salaried Employees" [3] provides:

(a) Termination "should only be considered after all other means have been considered and the action is in the best interest of the individual and the company."

(b) The employee's immediate supervisor is to provide a written notation of all conversations and warnings prior to termination.

(c) Any termination must be reviewed by the director of administration.

(d) Discharge for misconduct or dishonesty is to be immediate.

(e) The supervisor must write out the events leading to a recommendation of discharge, to which the employee may reply.

(f) If an employee is mismatched with a position requirement, an effort to place him more suitably is to be made, but lacking success he is to receive two weeks' notice or pay.

(g) An employee's serious performance and/or work habit problems are to be handled as per the Employee Discipline procedures outlined in the Manual, but if not corrected, termination requires two weeks' notice.[4]

(h) An employee whose position is terminated for economic or organizational reasons is to receive two weeks' notice or pay.

---

3. *See* Exhibit 4 appended to Defendant's Memorandum dated April 21, 1986.

*Discussion*

*Count One*

Plaintiff here asserts a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Defendant's motion contends that any damages under this count would be concluded as of August 9, 1985—the date when defendant's ceiling products division was sold and when plaintiff would have been lawfully terminated had he not allegedly been wrongfully discharged in 1982.

The ADEA is clearly intended to permit restoration to a position from which the employee has been discriminatorily precluded and in lieu thereof to compensate the victim for the losses sustained, i.e., "to restore him to the economic position he would have occupied but for the unlawful conduct of his employer." *Koyen v. Consolidated Edison Co. of New York, Inc.,* 560 F.Supp. 1161, 1168 (S.D.N.Y.1983). Naturally, any compensation awarded to a wrongfully discharged employee would necessarily be limited to that point in time when such employee would have been discharged due to the exercise of a proper, non-discriminatory business decision. *Id.* at 1169; *Stacey v. Allied Stores Corp.,* 768 F.2d 402, 408 (D.C.Cir.1985); *Hill v. Spiegel, Inc.,* 708 F.2d 233, 238 (6th Cir.1983); *Gibson v. Mohawk Rubber Co.,* 695 F.2d 1093, 1097 (8th Cir.1982).

Plaintiff argues that damages should not be limited because (1) there is no indication that the Second Circuit would adopt this restrictive theory and (2) there is a factual question as to whether plaintiff would have been working for the ceiling products division in 1985 or, if he was still working for defendant, whether he could have transferred to USG Acoustical Products Company—the purchaser of defendant's ceiling products division. With respect to the latter argument, plaintiff has not presented a substantial material question of fact. Plaintiff has presented no evidence which suggests that he would

---

4. *See* Exhibit 6 appended to Defendant's Memorandum dated April 21, 1986.

have remained other than in the position of a salesman until 1985. Furthermore, as to the question of whether he would have been transferred, defendant has submitted a copy of its sales agreement with USG, Article 15 of which provides that the purchaser was under no obligation to retain defendant's employees. The record further indicates that of defendant's entire sales crew only four persons were hired and that USG made those employment decisions independent of any formal or informal agreement with defendant. Thus, in actuality, plaintiff would not have been in a position in 1985 to demand a transfer because of his affiliation with defendant. Accordingly, on this basis, plaintiff has not presented a question of material fact.

Plaintiff's argument that the Second Circuit has not specifically adopted the restrictive perspective on damages is equally unavailing. In *Parcinski v. The Outlet Co.*, 673 F.2d 34 (2d Cir.), *cert. denied*, 459 U.S. 1103, 103 S.Ct. 725, 74 L.Ed.2d 950 (1982), the court reaffirmed the principal that it would not question an employer's decision to discharge an employee for legitimate business reasons. In *Parcinski*, the legitimate business decision was mass firings in order to accomplish a reorganization of the company's business and to cut back on labor costs. Plaintiff's citation to *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728 (2d Cir.1984), and its progeny, does not require a different holding. *Whittlesey* held that "front pay" was permitted as damages in an ADEA suit where reinstatement was impossible because there were no employment openings. It did not deal with the issue of whether front pay would be awarded where a job was eliminated because of a legitimate business decision, irrespective of the age of the employee who occupied that position. The issue is not whether front pay is a permissible element of recoverable damages; rather, the issue is to what extent did defendant proximately cause plaintiff's damages. *Parcinski*, 673 F.2d at 36. Stated another way, back pay restores one's loss sustained from the date of discrimination to trial; reinstatement restores one to his position to prevent future loss caused by the discrimination; and

front pay compensates one's future loss where discrimination continues to the present, but reinstatement is impossible. *Dominic v. Consolidated Edison Co. of New York, Inc.*, 822 F.2d 1249 (2d Cir. 1987). Each of these damage elements is premised on the aggrieved party being entitled to hold his position against any discrimination, but subject to legitimate business decisions. Any nondiscriminatory reason for terminating a position, provided it is not a sham or subterfuge to achieve a discriminatory purpose, likewise terminates the employee's entitlement to the position. To hold as plaintiff suggests would oblige the employer to retain an employee after that employee's position has been lawfully terminated. Such is contrary to the teachings of *Parcinski*.

As plaintiff has produced no evidence to suggest that defendant's sale of its ceiling division in 1985 was a sham or subterfuge for its alleged discriminatory purposes and, as he has not produced evidence to suggest that as of 1985 he might have been employed in one of defendant's other divisions or been transferred to USG, he has not met his burden on this issue. Accordingly, defendant's motion for summary judgment as to Count One is granted and plaintiff's entitlement to damages, if any will be limited to the period prior to and ending on August 9, 1985.

*Count Two*

■ In Count Two plaintiff claims that defendant's Manual was part of his employment contract and that he was discharged in violation of the procedure established for the discharge of an employee. *See* Manual at § 507.2. Defendant's motion as to this count is based on its claim that (a) the Manual does not, as a matter of law, constitute a basis for an implied contract of continued employment; and (b) even if such a contract could be implied, any damages would be cut off by the sale of the division on August 9, 1985.

The Connecticut Supreme Court has recently embraced the concept that an employee manual may provide the basis for the finding of an employment contract. *Carbone v. Atlantic Richfield Co.*, 204

Conn. 460, 471 (1987); *Finley v. Aetna Life & Cas. Co.*, 202 Conn. 190, 199, 520 A.2d 208 (1987); *accord, Magnan v. Anaconda Indus., Inc.*, 193 Conn. 558, 564, n. 14, 479 A.2d 781 (1984). In doing so, however, the court has emphasized that traditional contractual requirements must be met, *Magnan*, 193 Conn. at 565, 479 A.2d 781, and that the alleged contractual language must be specific and deference should be given to any disclaimers made in the manual. *Finley*, 202 Conn. at 199 n. 5, 520 A.2d 208. Here, plaintiff's claim of a contractual breach is directed toward the manner in which plaintiff was discharged; plaintiff does not allege, nor does the record sustain, that the Manual established a just cause standard for discharging employees. Section 507.2 of the Manual sets out a series of procedures which pertain to the discharge of an employee. *See supra.* The Manual, however, was only distributed to management personnel. Plaintiff's Deposition at 161. Indeed, the document is entitled "Management Guide." *Id.* Plaintiff received his copy of the Manual while he was a manager. When he was demoted to the position of a salesman in 1980, he knew that the Manual did not cover that position. He has not produced any evidence to suggest a question of fact to the contrary. In fact, plaintiff himself testified that he did not believe the company would follow its guidelines with respect to his employment as a salesman. Plaintiff's Deposition at 24, 27 (November 22, 1985). Thus, it is impossible for plaintiff to claim reliance on a purported obligation when he knows that the employer has no contemplation of having undertaken such an obligation. Stated another way, plaintiff has not demonstrated that he has met the threshold element of showing that he accepted his employment as a salesman relying on the representations made in the Manual. Furthermore, plaintiff has not demonstrated that the Manual was intended to establish definite contractual obligations. It is defendant's position that the Manual established only guidelines for employees, not mandatory directives enforceable as contractual obligations. Deposition of Don Harayda at 1–9, 1–22, 1–25, 1–38, 1–39, 1–40, 1–102, 1–159. Having failed to demonstrate both enforceable contractual language and reliance, plaintiff cannot prevail on this claim. Defendant's motion for summary judgment as to the claims in Count Two is granted.

*Count Three*

■ Plaintiff asserts a breach of an implied contract of good faith and fair dealing. This is a tort claim based on the premise that an employer should not be permitted to effectuate a discharge which contravenes a clear mandate of public policy. *Carbone*, 204 Conn. 460, 467 (no public policy violation where the manner of plaintiff's discharge was challenged); *Morris v. Hartford Courant Co.*, 200 Conn. 676, 679–80, 513 A.2d 66 (1986) (no public policy violation where the plaintiff was discharged based on the employer falsely and negligently charging the employee with criminal conduct); *Magnan*, 193 Conn. at 572, 479 A.2d 781 (no public policy violated where plaintiff contended that his discharge was made without just cause); *Sheets v. Teddy's Frosted Foods*, 179 Conn. 471, 474, 427 A.2d 385 (1980) (public policy violated where plaintiff's discharge was premised on his disclosure of his employer's non-compliance with the state Food, Drug and Cosmetic Act). To sustain his cause of action under this claim, plaintiff must allege and be able to prove "a demonstrably *improper* reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." *Carbone*, 204 Conn. at 467. This requirement applies regardless of whether the aggrieved employee challenges either the fact or the manner of his discharge. *Id.* at 468–470. Plaintiff has not alleged, nor does the record demonstrate, any public policy which has been called into question because of plaintiff's discharge. Accordingly, summary judgment is granted on this issue.

*Count Four*

Here, plaintiff alleges fraud, deceit, and misrepresentation in inducing him to enter upon and perform a contract of employment when defendant had no intention of

**28**

fulfilling the terms of the agreement outlined in the Manual. In the ruling on motion to dismiss and for summary judgment, at 5–6 n 4, Count Four of plaintiff's complaint was dismissed to the extent it sounded in tort. *See Cappiello v. Ragen Precision Indus., Inc.*, 192 N.J.Super. 523, 471 A.2d 432 (A.D.1984). It was intimated there that plaintiff's count four was merely a restatement of the contract claim set out in count two. Plaintiff argues, citing *L.F. Pace & Sons v. Travelers Indem. Co.*, 9 Conn.App. 30, 46–50, 514 A.2d 766 (1986), that Count Four extends his contract claims to include punitive damages. Inasmuch as summary judgment as to Counts Two and Three have been granted, summary judgment as to Count Four must also be granted.

*Count Five*

Here, plaintiff alleges a breach of contract in his demotion in 1980. Defendant claims there is no such cause of action allowed in Connecticut, citing *Santanella v. Southern New England Telephone Co.*, 10 C.L.T. No. 20, at 11 (Super.Ct.1983), a decision by then Superior Court Judge Dupont, now the Chief Judge of the Appellate Court. Plaintiff suggests that this court's prior ruling sustained the cause of action and established the rule of the case. However, the issue now put forth was not previously presented and will be decided here. Though this court is not bound by state trial court decisions, they are illuminating as to what might be the determination of the highest court in the state. *Santanella* holds only that one claiming age discrimination resulting in a wrongful demotion may only assert such claim within the statutory procedure established by the Legislature. It does not bar a breach of contract claim premised on an allegedly wrongful demotion. Accordingly, the motion must be denied as to Count Five.

*Count Six*

The same issue is presented here as was presented in the third count. For the same reasons as discussed above with respect to Count Three, the motion is granted as to Count Six.

SO ORDERED.