Butler, J.
Plaintiff, Donald F. Burke (Burke), brings this action against his former employer, Raytheon Company (Raytheon), alleging Raytheon wrongfully discharged Burke from employment (Count I); discriminated against his handicap and age in violation of G.L.c. 151B, §§4(16), 4(1B) (Count®; was negligent (Count III); and engaged in slander and defamation (Count IV). Raytheon now moves pursuant to Mass.R.Civ.P. 12(b)(6) to dismiss Counts I and III on grounds that these claims are preempted by the Labor Management Relations Act, §301 (LMRA). Raytheon also moves to dismiss so much of Count II which purports to allege age discrimination because the claim was not filed with the Massachusetts Commission Against Discrimination (MCAD) within the required six months from the time the discrimination occurred as is required by G.L.c. 15 IB, §5. Raytheon’s motion to dismiss Count IV alleging defamation and slander was denied from the bench.
BACKGROUND
Raytheon employed Burke as a security guard for over seventeen years. During Burke’s employment, he was a member of the Raytheon Guard Association. The Raytheon Guard Association is a union whose members are in charge of guarding Raytheon’s plants. The union and Raytheon entered a collective bargaining agreement (the Agreement), which controls the employment relationship between Raytheon and union guard members.
In 1986, Burke sustained injuries to his lower back while performing duties within the scope of his employment. Burke exercised his right to take a disability leave of absence and did not work from March 13, 1986, through September 1, 1987. Burke developed a physical handicap as a result of the work-related injury, which restricted his ability to work when he returned to Raytheon on September 1, 1987.
In October 1990, Burke attended a meeting with Raytheon management and union representatives. He was informed at that time that he was being suspended from work for excessive absenteeism. During the meeting, Burke encountered a dialogue between Raytheon management and union representatives in which the conversation depicted Burke as an alcoholic. As a condition to returning to work, Raytheon required Burke to participate in an outpatient alcoholic rehabilitation program.
On April 12, 1991, Burke filed a charge of handicap discrimination with the MCAD. On September 24, 1991, Raytheon terminated Burke’s employment. On December 18,1991,BurkeamendedhischargewiththeMCAD, but did not add age discrimination to the charge.
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must take the allegation of the complaint, as well as any inference which can be drawn from those allegations in the plaintiffs favor, as true. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). The “complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitled [her] to relief." Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). A complaint is not subject to dismissal if it could support relief under any theory of law. Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979).
I. Wrongful discharge from employment (Count I).
Burke contends that Raytheon refused to consider supporting documentation explaining his excessive absences, and as a result, his discharge from employment “was unreasonable, in violation of the plaintiffs contractual right to employment at Raytheon.” (Burke’s complaint, paragraph 7.) Burke asserts that his absences from work were justified and that had Raytheon considered the documentation he presented at the October 1990 meeting, it would have been evident that his absences were excused and Raytheon would have had no legitimate reason for firing him. Accordingly, Burke alleges that his termination from Raytheon occurred without just cause, entitling him to relief.
The Labor Management Relations Act, §301, preempts claims brought under state law if the resolution of the state claim requires interpretation of the collective bargaining agreement. Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 405-06, 411 (1988). Lingle requires this court to determine whether Burke’s wrongful termination claim can be sustained without interpreting the collective bargaining agreement between Raytheon and the Raytheon Guard Association, in which Burke was a member.
In the case at bar, Article XIV of the collective bargaining agreement specifically addresses “excused absences." The Agreement allows a leave of absence for any guard “who has been unable to perform the duties of a Guard.” (Agreement, paragraph 14.0.) The Article further proclaims that excused absences shall include personal illness or an accident. Id. at 14.1. *366 Whether Burke’s absences were excused depends on the interpretation of Article XIV.
Article XI, entitled “Grievances,” provides in relevant part that:
11.0 In all cases of any differences as to the interpretation of this agreement in its application to a particular situation, or as to whether the agreement has been or is being observed and performed, the parties shall follow the procedures for adjustment and settlement of such grievances outlined in the following sections . . .
The Agreement specifically requires that any differences in the interpretation of the Agreement shall follow the grievance procedures of Article XI. Since Burke did not agree with Raytheon that his absences were unexcused or excessive, he could have followed the grievance procedures outlined in Article XI.
Under Article XI, interpretation of Article XIV, “Excused Absences,” would eventually be decided by an arbitrator (Article XI, paragraph 11.2). Had Burke followed the grievance procedures, an arbitrator would have the ultimate decision to determine if Burke’s absences were excused or overly excessive.
Additionally, Burke’s claim concerns the underlying reasons for his suspension and discharge from Raytheon. Article XI, paragraph 11.3 specifically addresses Burke’s dilemma and unambiguously sets out the procedure Burke should have followed within the Agreement. In the event arbitration was unsuccessful, Burke could have then filed suit in federal court. The Agreement specifically addresses interpretation of the articles within the collective bargaining contract, including excused absences.
Burke’s complaint also infers Raytheon discharged him without just cause. Article XIII, entitled “General Conditions,” provides in relevant part that “it is understood that no member of the guard force .. . will be disciplined without just cause.” (Paragraph 13.4.) When reading this clause of the Agreement in a broad manner, the term “discipline” could be construed to include suspension and termination from employment. Article XI also specifically addresses proper redress for circumstances that involve suspension and termination. Accordingly, the language “just cause” is subject to interpretation, and interpretation of the Agreement is controlled by Article XI, requiring dismissal of Count I.
Furthermore, if Burke had brought his claim in federal court under LMRA, §301, he would have had to take his claim through the grievance procedures by way of arbitration as is established in the Agreement before he could bring a civil suit. Filing suit directly in state court without first exhausting the grievance procedures established in the Agreement is directly contrary to the preemptive purpose of §301. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 219-20 (1985). The need to preserve the effectiveness of arbitration is paramount to the underlying reasons of the preemp-tions under §301. Under Article XI of the Agreement, the parties have agreed to a mutual arbitrator for interpreting the meaning of their agreement. Unless the suit is preempted, the parties’ federal right to decide who is to resolve contract disputes will be lost. Id. Accordingly, any alleged grievances Burke has in regard to his discharge that requires interpretation of the Agreement should have been brought under Article XI, and if no settlement occurred, then Burke could have brought an action in federal court. To determine whether Burke’s termination was contractually justified would require this court to interpret the Agreement. As a result, Burke’s claim of breach of contract under the Agreement is dismissed as it is preempted by LMRA, §301. See Magerer v. John Sexton & Co., 912 F.2d 525, 528-31 (1st Cir. 1990) (proper discharge from employment is determined from the terms of the collective bargaining agreement).
II. Age discrimination (Count II).
Raytheon contends that Burke’s failure to allege age discrimination in either of his charges filed with the MCAD bars his subsequent claim of age discrimination in this action. There is no dispute that Burke’s age discrimination claim only arose in this civil action, which was filed long after the required six-month filing period with the MCAD.
In Massachusetts, a claim for age discrimination must be filed with the MCAD within six months of the last alleged act of discrimination. G.L.c. 15IB, §5. A charge filed with the MCAD alleging discrimination may be amended after six months from when the discrimination occurred under certain circumstances. Section 1.03(5) (a) of the Rules of the MCAD provide in relevant part:
A complaint. . . may be amended as of right to . . . clarify and amplify allegations made therein. An amendment alleging additional acts constituting unlawful discriminatory practices related to or arising out of the subject matter of the original complaint may be permitted by leave of the commissioner. Amendments shall relate back to the original filing date.
The issue in the case at bar is very similar to the issue in Conroy v. Boston Edison Co., 758 F.Supp 54 (D.Mass. 1991). In Conroy, the plaintiff attempted to add an áge discrimination count to her complaint, when she had alleged only sex discrimination in her charge filed timely with the MCAD. Id. at 56. The court elaborated that an amendment is proper when the new discrimination claim grows out of the same subject matter as the original charge and the protected categories are related, as is the case, for example, with race and national origin. Id. at 58. The court further stated that amendments alleging new protected categories of discrimination will still relate back to the original filing where the predicate facts underlying each claim are the same. Id. (citations omitted). Accordingly, where a *367 factual statement in the plaintiffs charge to the MCAD should have alerted the agency to an alternative basis of discrimination, the plaintiff will be allowed to allege this claim in his or her complaint regardless of whether it was actually ever investigated. Id. Therefore, the scope of the civil action is not determined by the specific language of the charge filed with the MCAD, but may encompass acts of discrimination which the MCAD Investigation could reasonably be expected to uncover. Id.
In the case at bar, Burke alleges that he was discriminated against because of his age and he bases the allegation on the same underlying facts of his handicap claim. There is no entirely new and distinct claim of discrimination that would prevent Burke’s age discrimination claim from relating back to the original charge with the MCAD. Cf. Conroy, supra at 59 (plaintiffs initial charge with the MCAD claimed sex discrimination in hiring practices, while her amended complaint alleged age discrimination; because the amended claim did not arise out of same predicate facts, the amended claim did not relate back). Burke is alleging Raytheon discriminated against his handicap by firing him without just cause. Burke’s complaint also alleges Raytheon discriminated against his age when Raytheon discharged him. Both claims of discrimination are based upon Burke’s termination from employment at Raytheon. Since each discrimination claim arises from the same underlying predicate facts, the principles enunciated in Conroy are applicable and Burke’s age discrimination claim relates back to the original charge with the MCAD. Raytheon’s motion to dismiss so much of Count II relating to age discrimination is denied.
III. Negligence (Count III).
Burke alleges that Raytheon owed him a duty as an employer to properly report and document his absenteeism and by failing to maintain such reports, Ray-theon was negligent. Burke contends that because he did not have additional documentation available explaining his absenteeism, Raytheon wrongfully discharged him without allowing him an opportunity to make a proper showing that his absences were justified. Thus, Burke argues, Raytheon breached its obligation to document his injuries. Burke further alleges that Raytheon’s negligence in not maintaining these reports has made it very difficult for Burke to establish that he is eligible for disability benefits under the worker’s compensation policy fiimished by Raytheon.
The parties dispute the source of Raytheon’s duly to document Burke’s absences. Burke alleges that such a duty arises from the internal policies and procedures promulgated by Raytheon which are contained in Raytheon’s Human Resource Policies and Procedure Manual (the Manual). This policy is not contained within the collective bargaining agreement; Burke therefore contends it is not subject to interpretation, allowing his claim to survive the preemptive effect of LRMA, §301. Whether the Manual establishes that Raytheon owed Burke a duty separate from the collective bargaining agreement must be examined.
Solely because Raytheon’s Manual on procedure may state that the Company will document injuries and absences does not give rise to a duty that would be owed to each employee, permitting employees to sue for negligence in the event the procedure is not followed. A duty will only arise if the manual was in some way incorporated, either implicitly or expressly, into the contract governing Burke’s employment. See Jackson v. Action for Boston Community Development, Inc., 403 Mass. 8, 13 (1988) (employee failed to establish that the employer’s manual constituted a contract that would give rise to duties the employer would owe to the employee); Swell v. Conwed Corp., 666 F.Supp. 23, 26-27 (D.Conn. 1987) (employment manual was not part of the plaintiffs employment contract and the employer’s failure to follow the manual when the employee was discharged did not establish a cause of action under the circumstances). Accordingly, if Ray-theon owed this duty to document Burke’s absences, it is because Burke was an employee of Raytheon and the Manual was part of his employment contract. The source of the duly arises from the employment relationship between the parties. Here, Burke’s employment relationship with Raytheon is governed by the collective bargaining agreement.
Although Burke’s complaint does not expressly say so, it can be read fairly as alleging that Raytheon breached the covenant of good faith and fair dealing by not following its own internal procedures. In Massachusetts, every contract implies good faith and fair dealing between the parties and the covenant provides that neither parly should do anything which would have an effect of destroying or injuring the right of the other party to receive the fruits of the contract. Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 471 (1991).
Burke’s argument alleges that Raytheon’s failure to maintain documentation of his absences led to the loss of his job and his inability to receive worker’s compensation benefits. The fruits of Burke’s employment contract constituted continued employment and a right to receive worker’s compensation benefits in the event bf a work-related injury. Raytheon’s failure to document Burke’s absences may be construed as breaching the implied covenant of good faith and fair dealing within the contract.
Questions of good faith and fair dealing necessarily are related to the application of terms of the contractual agreement. Allis-Chalmers Corp., supra at 217, n.11 (1985). Because Burke’s asserted right to a duty by Raytheon derives from the contract, as it is defined by the contracted obligation of good faith and fair dealing, an attempt to assess liability against Ray-theon will involve contract interpretation. Id. at 218. Additionally, pleading a cause of action in tort will not *368 circumvent the preemptive effect of the LMRA, §301, when the plaintiffs right is based in contract and could have been pleaded as a contract claim. Id. at 220. Here, Burke’s claim is soundly based in contract law. Burke’s negligence claim is “inextricably intertwined” with consideration of the terms of the collective bargaining agreement and is preempted under §301. Id. at 213. Raytheon’s motion to dismiss Count III is allowed.
ORDER
For the foregoing reasons, it is therefore ORDERED that Raytheon’s motion to dismiss is ALLOWED as to Counts I and III and is DENIED as to Counts II and IV.