### THOMAS P. FINLEY *v.* AETNA LIFE AND CASUALTY COMPANY
### (12891)

PETERS, C. J., DANNEHY, SANTANIELLO, CALLAHAN and KLINE, Js.

Argued December 4, 1986—decision released January 27, 1987

*Albert Zakarian,* with whom were *Stefan R. Underhill* and, on the brief, *Felix J. Springer,* for the appellant (defendant).

*Wesley W. Horton,* with whom were *Robert W. Heagney* and *Alexandra Davis,* for the appellee (plaintiff).

*John A. Speziale, Jay E. Bovilsky* and *William H. Narwold* filed a brief for the Connecticut Business and Industry Association, Inc., as amicus curiae.

PETERS, C. J. This appeal involves claims of an employee that he was wrongfully discharged despite assurances of lifelong employment so long as his performance remained satisfactory. The plaintiff, Thomas

P. Finley, brought an action in three counts against the defendant, Aetna Life & Casualty Company, alleging that the defendant's termination of his employment was wrongful because of: (1) breach of express contract; (2) promissory estoppel; and (3) breach of an implied covenant of good faith. Following a jury trial, the trial court, *Missal, J.*, granted the defendant's motion for directed verdicts on the second and third counts of the complaint, and submitted the first count, alleging breach of express contract, to the jury. The jury rendered a general verdict for the defendant. The plaintiff appealed to the Appellate Court, which found error and ordered a new trial on the first and second counts of the complaint. We granted the defendant's petition for certification and now reverse the judgment of the Appellate Court.

This case arises out of the defendant's decision to terminate the employment of the plaintiff on April 12, 1976. The plaintiff, who had been employed by the defendant for twenty-four years, was a manager in the defendant's Medicare department, part B, at the time of his discharge. The jury might reasonably have found that the defendant, through its agents and its personnel manual,[1] made representations to him that his employment would not be terminated so long as his performance was satisfactory. Furthermore, the plaintiff at trial introduced into evidence written performance appraisals made during his employment with the defendant, as well as the oral statements of one of his former supervisors, to show that his job performance had been satisfactory. From the defendant's evidence, however, the jury might also reasonably have found that for some time before the plaintiff's discharge, he and his immediate supervisor had been involved in a

[1] The manual provided, in a section subtitled "Involuntary Terminations (Dismissals)," that "[i]t is Company policy to terminate any employee who cannot perform satisfactorily, whose attendance is poor, or who is otherwise unsuited to his job."

divisive and acrimonious departmental dispute. Both men ultimately were discharged because of their inability to resolve their differences.

The plaintiff's amended complaint alleged, in the first count, the breach of an express contract arising out of the defendant's assurances that the plaintiff would remain employed so long as his job performance was satisfactory. Despite the defendant's motion for a directed verdict on this count, the trial court permitted this claim to go to the jury. The jury found for the defendant.

The plaintiff's second count, sounding in promissory estoppel, alleged that the plaintiff had relied to his detriment on the defendant's representations of continued employment. His third count alleged that the defendant violated an implied covenant of good faith by wrongfully terminating his employment. As to these two counts, the trial court granted the defendant's motion for a directed verdict. After the adverse jury verdict on count one, the plaintiff moved to set aside the verdict and for a new trial on these latter counts only. This motion was denied by the trial court.

The plaintiff appealed to the Appellate Court. With respect to the first count, in which he was appealing from the adverse jury verdict, the plaintiff claimed that the trial court had erred in instructing the jury that: (1) the statute of frauds barred it from considering any oral representations made by the defendant in deciding whether the parties had had an employment contract; and (2) it could not find an employment contract solely from statements made in the defendant's personnel manual. With respect to the second count, in which he was appealing from the directed verdict, the plaintiff claimed that he had detrimentally relied on the defendant's promises of continued employment while

his job performance remained satisfactory. No appeal was taken with respect to the directed verdict on the third count.[2]

The Appellate Court found error in each of the rulings challenged by the plaintiff. It rejected the defendant's argument that the general verdict rule barred its review of the plaintiff's allegations of error in the jury instructions; *Finley* v. *Aetna Life & Casualty Co.*, 5 Conn. App. 394, 396–97, 499 A.2d 64 (1985); and found plain error in the charge as given. Id., 402, 404–13. It also held that the trial court improperly directed a verdict for the defendant on the plaintiff's promissory estoppel claim. Id., 413–17. The Appellate Court accordingly set aside the verdict for the defendants on the first and second counts of the complaint and ordered a new trial on those counts. Id., 417.

On appeal to this court after certification, the defendant claims that the Appellate Court erred in holding that: (1) the general verdict rule did not apply to the circumstances of this case; (2) the plaintiff's claims of error relating to the trial court's jury charge were reviewable under the plain error doctrine, despite the plaintiff's failure properly to preserve these claims for appeal; (3) the errors in the charge were not harmless; and (4) the trial court erred in directing a verdict for the defendant on the second count of the complaint, alleging promissory estoppel. We agree with the defendant that the general verdict rule requires the sustaining of the jury's verdict notwithstanding the Appellate Court's findings of error in the jury charge on the first count and the directed verdict on the second count.

---

[2] The plaintiff raised in his preliminary statement of issues, but failed to brief, a claim of error in the granting of the directed verdict on the third count. As a result, the Appellate Court deemed this claim abandoned. *Finley* v. *Aetna Life & Casualty Co.*, 5 Conn. App. 394, 396 n.1, 499 A.2d 64 (1986).

I

As a threshold matter, we first consider the issue of whether the Appellate Court improperly invoked the plain error doctrine to reach the merits of the plaintiff's claims regarding the jury charge on the first count. The plaintiff, although he took exception to the portions of the charge relating to the statute of frauds and the effect of the defendant's personnel manual, failed to raise these claims of error in his motion to set aside the verdict. Accordingly, the Appellate Court held that it could review these claims only under the plain error doctrine. See *Pietrorazio* v. *Santopietro,* 185 Conn. 510, 515–16, 441 A.2d 163 (1981) (in civil action seeking money damages, claims of error must be raised in motion to set aside verdict in order to ensure their full appellate review). The plain error doctrine, as stated in Practice Book § 3063 (now § 4185), provides that the Supreme and Appellate Courts[3] "may in the interests of justice notice plain error not brought to the attention of the trial court." See also General Statutes § 52-265 (a).[4] The defendant relies on several recent

[3] Although Practice Book § 3063 (now § 4185) applies by its terms to Supreme Court review of trial court decisions, the rule is also binding on the Appellate Court by virtue of Practice Book § 2000, which provides: "[t]he practice and procedure for appeals to the appellate court shall conform to the rules of practice governing appeals to the supreme court except where a particular practice or procedure is specified by the rules of the appellate court."

[4] "[General Statutes] Sec. 52-265. ACTION OF SUPREME COURT ON APPEALS AND WRITS OF ERROR. COSTS. (a) On an appeal or writ of error, if the supreme court finds errors in the rulings or decision of the court below or of a judge thereof when the jurisdiction of any action or proceeding is or shall be vested in him, and unless it is of the opinion that the errors have not materially injured the appellant or plaintiff in error, it may: (1) Render judgment in favor of the appellant or plaintiff in error, together with his costs, or (2) may remand the action to the court below or to a judge thereof having jurisdiction, to be proceeded with by the court or judge to final judgment. If an action is remanded, the whole costs, except the costs on the writ of error or appeal, shall be taxed in favor of the prevailing party, and the costs in the supreme court shall be taxed in favor of the plaintiff in error or appellant."

holdings of this court to argue that plain error review should be invoked only in extraordinary situations where the error is obvious. See *Kolich* v. *Shugrue,* 198 Conn. 322, 326, 502 A.2d 918 (1986); *State* v. *Rothenberg,* 195 Conn. 253, 262–63, 487 A.2d 545 (1985). In this case, the defendant contends, plain error review was inappropriate because the relevant portions of the trial court's charge were not contrary to "settled" Connecticut law. We disagree.

Practice Book § 3063 sets forth a discretionary standard under which the Supreme and Appellate Courts "may" review claims not properly raised in the trial court "in the interests of justice." See *State* v. *Tatem,* 194 Conn. 594, 595, 483 A.2d 1087 (1984); see generally *Mickel* v. *New England Coal & Coke Co.,* 132 Conn. 671, 674, 47 A.2d 187 (1946). On certification, therefore, the scope of our review is limited to determining whether the Appellate Court abused its discretion in granting review under the plain error doctrine. The critical question, accordingly, is not whether this court would have granted review in the same circumstances, but whether, if we indulge every reasonable presumption in favor of the correctness of the Appellate Court's decision, that court properly exercised its discretionary power under Practice Book § 3063. See *Reynolds* v. *Ramos,* 188 Conn. 316, 320–21, 449 A.2d 182 (1982); *DeLorenzo* v. *Great Atlantic & Pacific Tea Co.,* 4 Conn. App. 560, 562, 495 A.2d 1106 (1985); *DeSantis* v. *Piccadilly Land Corporation,* 3 Conn. App. 310, 316, 487 A.2d 1110 (1985); see generally *LaCroix* v. *Board of Education,* 199 Conn. 70, 75, 505 A.2d 1233 (1986). We answer this question in the affirmative.

We first examine the propriety of plain error review of the trial court's instruction regarding the statute of frauds. The trial court told the jury that "to determine whether an express contract of employment of a nature [the plaintiff] claims did exist, you cannot rely on any-

thing that [the plaintiff] or any other witness may have said with regard to oral promises made to [the plaintiff] about a contract of employment with the defendant . . . . It is the law of this state that they could not be the basis of a contract of employment . . . for any agreement that is not to be performed within one year of the making thereof must be in writing." The defendant claims the Appellate Court erred in reviewing this instruction under the plain error doctrine because Connecticut law is "unsettled" on the issue of whether the statute of frauds applies to an employment contract of indefinite duration. It further claims that the parties' alleged contract "had a minimum intended term of more than one year," and that, therefore, the contract was subject to the statute of frauds provision that "any agreement that is not to be performed within one year from the making thereof" must be evidenced by a writing signed by the party to be charged or its agent. General Statutes § 52-550 (a) (5). We disagree.

Despite a dearth of recent Connecticut case law on the subject, our most apposite precedent comports with the majority view that a contract of indefinite duration is not subject to the "one year" provision of the statute of frauds. *Burkle* v. *Superflow Mfg. Co.*, 137 Conn. 488, 493, 78 A.2d 698 (1951); see 1 Restatement (Second), Contracts (1979) § 130, comment a; 2 A. Corbin, Contracts (1950) §§ 444 through 445; 3 S. Williston, Contracts (3d Ed. Jaeger) § 500. "Under the prevailing interpretation, the enforceability of a contract under the one year provision does not turn on the actual course of subsequent events, nor on the expectations of the parties as to the probabilities. Contracts of uncertain duration are simply excluded; the provision covers *only* those contracts whose performance *cannot possibly* be completed within a year." (Emphasis added.) 1 Restatement (Second), Contracts, supra; *Burkle* v. *Superflow Mfg. Co.*, supra. The plaintiff's alleged

employment contract was of indefinite duration. The defendant does not claim that it could not possibly be performed within a year. We conclude, therefore, that the Appellate Court did not abuse its discretion in concluding that the trial court's instruction was plain error reviewable under Practice Book § 3063.

We now turn to the defendant's claim that the Appellate Court erred in reviewing the trial court's instruction on the personnel manual under the plain error doctrine. The trial court instructed the jury in the following manner: "[Y]ou cannot rely solely on anything written in [the defendant's] employment manual to determine whether the contract of employment [the plaintiff] claims existed did, in fact, exist. Although there has been introduced evidence from the employment manual; there has been testimony about these pages of the employment manual, it is the law in this state that without further explicit indication from the defendant . . . that an employment manual cannot form a sole basis of a contract between the plaintiff and the defendant." The defendant argues that, like the instruction on the statute of frauds, this instruction was not a "clear misapplication of a settled rule of law." We disagree.

The defendant correctly asserts that it is not "settled" law in Connecticut that statements in an employer's personnel manual may form the basis of a contract between employer and employee. This court, however, has never held, as the trial court instructed the jury, that such statements *cannot* form the basis for such a contract. To the contrary, we have stated only recently that such representations, under appropriate circumstances, may give rise to an express or implied contract between employer and employee. *Magnan* v. *Anaconda Industries, Inc.,* 193 Conn. 558, 564, 479 A.2d 781 (1984); see generally *Dolak* v. *Sullivan,* 145 Conn. 497, 503, 144 A.2d 312 (1958) (statements in

written retirement plan gave rise to employer-employee contract); *Tilbert* v. *Eagle Lock Co.,* 116 Conn. 357, 361–63, 165 A. 205 (1933) (assurances in employee benefit plan constituted enforceable promise to pay benefits in accordance with plan).

In the present case, statements in the defendant's personnel manual were of critical relevance to the issue of whether an express contract existed between the defendant and the plaintiff. " 'The intention of the parties manifested by their words and acts is essential to determine whether a contract was entered into and what its terms were. . . .' " *Hydro-Hercules Corporation* v. *Gary Excavating, Inc.,* 166 Conn. 647, 652, 353 A.2d 714 (1974). The relevant statements in the defendant's personnel manual certainly could have been interpreted as noncontractual. In the absence of "definitive contract language," however, "the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact." *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.,* 183 Conn. 266, 274–75, 439 A.2d 314 (1981). In this case, therefore, whether the defendant's personnel manual gave rise to an express contract between the parties was a question of fact properly to be determined by the jury. See *Toussaint* v. *Blue Cross,* 408 Mich. 579, 613–14, 292 N.W.2d 880 (1980); *Pine River State Bank* v. *Mettille,* 333 N.W.2d 622, 628 (Minn. 1983); *Weiner* v. *McGraw-Hill, Inc.,* 57 N.Y.2d 458, 465–66, 443 N.E.2d 441, 457 N.Y.S.2d 193 (1982). The Appellate Court did not, therefore, abuse its discretion in granting review of the trial court's instruction under the plain error doctrine.[5]

---

[5] The brief of the Connecticut Business and Industry Association, as amicus curiae, expresses the fear that the Appellate Court's decision in this regard will make "every termination a potential jury trial." This fear is unfounded. By eschewing language that could reasonably be construed as a basis for a contractual promise, or by including appropriate disclaimers of the intention to contract, employers can protect themselves against employee contract claims based on statements made in personnel manuals.

## II

In an argument ancillary to its claim that the Appellate Court erroneously granted review under the plain error doctrine, the defendant claims that any error in the trial court's charge to the jury was harmless. In regard to the instruction barring the jury from considering the defendant's oral statements as the basis for a contract, the defendant claims any error was harmless because the plaintiff failed to introduce evidence of oral statements that would tend to support a contract claim. The Appellate Court, however, found evidence in the record to support its conclusion that the defendant, through its agents, did make oral representations to the plaintiff which the jury could reasonably have interpreted as supporting the plaintiff's claim of an express contract. The Appellate Court could reasonably have concluded that the jury should have had the opportunity to consider these oral representations in making the factual determination of whether such a contract existed. The trial court's erroneous instruction deprived it of this opportunity. We therefore conclude that the instruction was not harmless.

The defendant's next claim is that any error in the trial court's instruction on the personnel manual was harmless because, in terminating the plaintiff, the defendant complied with the procedures outlined in its personnel manual. This claim requires little discussion. The trial court's instructions prohibited the jury from finding a contract based on the representations contained in the personnel manual. The defendant now asks us to conclude that the jury was obliged to find in its favor on a question of fact which the court forbade it to consider. As we held earlier in this opinion, the import of the defendant's personnel manual in resolving the plaintiff's claim of an express contract was a question of fact. The Appellate Court could rea-

sonably have concluded that "[t]he plaintiff was entitled to have [this] critical factual issue in the case presented to the jury pursuant to proper principles of law." *Finley* v. *Aetna Life & Casualty Co.*, supra, 413. Accordingly, we conclude that the erroneous instruction on the defendant's personnel manual was not harmless.[6]

## III

We now address the defendant's principal claim of error, that the Appellate Court erred in holding that the general verdict rule did not require that court to sustain the jury verdict for the defendant in spite of any trial court error. The defendant points out that the first count of the plaintiff's complaint raised two principal claims: first, that a contract existed between the parties; and second, that the defendant's termination of the plaintiff's employment, despite his satisfactory job performance, constituted a breach of that contract. The defendant's answer denied both of these claims. The plaintiff did not submit interrogatories to the jury to determine its findings on each of the plaintiff's principal claims; Practice Book § 312; and the jury ultimately rendered a general verdict for the defendant.

On appeal, the plaintiff's claims of error attacked only the trial court's instructions on the issue raised in the

[6] The defendant claims additionally that any errors in the trial court's charge to the jury were harmless because, as a matter of law, the plaintiff's case falls within the ambit of the traditional rule that, absent independent consideration, an agreement for "permanent" employment is terminable at the will of either party. See, e.g., *Fisher* v. *Jackson*, 142 Conn. 734, 736, 118 A.2d 316 (1955). Since this argument assumes that the plaintiff failed to state a cognizable claim in contract, it necessarily implies that the trial court erred in denying the defendant's motion for a directed verdict on the first count. The defendant, however, did not include such a claim of error in its brief to the Appellate Court. We therefore decline to consider this same claim, raised interstitially in the defendant's harmless error argument, on appeal by certification from that court. See *Hartford* v. *Freedom of Information Commission*, 201 Conn. 421, 433, 518 A.2d 49 (1986); *State* v. *Torrence*, 196 Conn. 430, 434 and n.6, 493 A.2d 865 (1985).

first claim—whether a contract existed—and not the issue raised in the second claim—whether the defendant's conduct constituted a breach of the contract. The defendant's answer, however, raised distinct defenses to both of the plaintiff's principal claims. Because the jury's verdict for the defendant could have been based on either of these distinct defenses, the defendant now urges that review of the plaintiff's claim of error is precluded by the general verdict rule. We agree with the defendant that the general verdict rule applies in the present case, and that the verdict for the defendant comprises an "implicit finding" that the plaintiff was terminated for his failure to peform his job satisfactorily.

The plaintiff concedes that even if the jury had found that the parties entered into a contract, it reasonably could have found that the plaintiff was terminated for failing to perform his job satisfactorily. The plaintiff argues, however, that the general verdict rule only applies to multicount complaints, or actions involving one or more special defenses. Because only one count of the plaintiff's amended complaint, and no special defenses, went to the jury, the plaintiff claims that the general verdict rule is not applicable. The Appellate Court took the same view. *Finley* v. *Aetna Life & Casualty Co.,* supra, 397. We disagree.

The so-called general verdict rule provides that, if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party. *Stone* v. *Bastarache,* 188 Conn. 201, 204, 449 A.2d 142 (1982); *Collucci* v. *Pinette,* 185 Conn. 483, 489, 441 A.2d 574 (1981). The rule applies whenever a verdict for one party could reasonably be rendered on one or more distinct causes of action; see *Matthews* v. *F.M.C. Corporation,* 190 Conn. 700, 706, 462 A.2d 376 (1983); or distinct defenses. See *Royal*

*Homes, Inc.* v. *Dalene Hardwood Flooring Co.,* 151 Conn. 463, 466, 199 A.2d 698 (1964). A party desiring to avoid the effects of the general verdict rule may elicit the specific grounds for the verdict by submitting interrogatories to the jury. Alternatively, if the action is in separate counts, a party may seek separate verdicts on each of the counts. *Ziman* v. *Whitley,* 110 Conn. 108, 113–15, 147 A. 370 (1929).

Under the interpretation advanced by the plaintiff, the general verdict rule would apply only if two or more counts of the plaintiff's complaint had been submitted to the jury, or if, for example, the defendant had pleaded the plaintiff's failure to perform his job satisfactorily as a special defense. The application of the general verdict rule, however, does not depend on the niceties of pleading but on the distinctness and severability of the claims and defenses raised at trial. Where, for example, a plaintiff submits to the jury several different specifications of negligent conduct in support of a single cause of action for negligence, we have held that the general verdict rule does not apply. *Novak* v. *Anderson,* 178 Conn. 506, 508, 423 A.2d 147 (1979); *McDonough* v. *Lenox Theater Co.,* 143 Conn. 646, 648, 124 A.2d 520 (1956). Our rationale for declining to apply the rule in such circumstances is that "the various grounds of negligence alleged are often so interlocked as to make it difficult to consider them separately," and formulating interrogatories to obtain separate findings on the various claims would "complicate the work of court, jury and counsel." *Ziman* v. *Whitley,* supra, 115. Where, however, a plaintiff submits two or more separate causes of action to the jury, such as a claim for wanton and willful misconduct joined with a claim for simple negligence, the general verdict rule does apply, whether or not the claims are pleaded in separate counts. Id., 116–17; *Menzie* v. *Kalmonowitz,* 107 Conn. 197, 200, 139 A. 698 (1928). Likewise, it is the

distinctness of the defenses raised, and not the form of their pleading, that is the decisive test governing the applicability of the general verdict rule. *Meglio* v. *Comeau,* 137 Conn. 551, 553–54, 79 A.2d 187 (1951). "If the defenses are clearly distinct, the fact that one has not been specially pleaded . . . will not prevent the application of the rule." *Royal Homes, Inc.* v. *Dalene Hardwood Flooring Co.,* supra, 466; accord *LaFleur* v. *Farmington River Power Co.,* 187 Conn. 339, 342, 445 A.2d 924 (1982); *Henry A. Finman & Son, Inc.* v. *Connecticut Truck & Trailer Service Co.,* 169 Conn. 407, 410, 363 A.2d 86 (1975).

We again emphasize that in the present case the defendant's answer controverted both of the principal claims raised by the plaintiff's complaint. The defendant's denials of the contract's existence and of its breach presented the jury with distinct and severable defenses to the plaintiff's claims. See *Henry A. Finman & Son, Inc.* v. *Connecticut Truck & Trailer Service Co.,* supra. The plaintiff did not request interrogatories to the jury in order to obtain separate jury findings on the controverted issues. While we acknowledge that the trial court's erroneous instructions would have tainted any jury finding for the defendant on the issue of the contract's existence, we presume that the jury's general verdict included a finding that the plaintiff's termination was justified by his unsatisfactory job performance. Accordingly, we conclude that the verdict for the defendant must be sustained.

## IV

Our conclusion that the general verdict rule requires the sustaining of the defendant's verdict on the first count makes it unnecessary for us to reach the merits of the defendant's fourth and final claim. That claim is that the Appellate Court erroneously reversed the directed verdict for the defendant on the second count

of the plaintiff's complaint, which alleged a cause of action in promissory estoppel. Under a promissory estoppel theory, a party may maintain a claim for damages based upon a promise which induces the party's action or forbearance, if such action or forbearance is undertaken in reasonable reliance upon the promise. *Sheets* v. *Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 475, 427 A.2d 385 (1980); *Hebrew University Assn.* v. *Nye,* 148 Conn. 223, 232, 169 A.2d 641 (1961); 1 Restatement (Second), Contracts (1981) § 90.

In the present case, the plaintiff based his cause of action in the second count upon the defendant's alleged promise not to terminate him so long as he performed his job satisfactorily. As discussed in part III, supra, we presume that the jury's general verdict on the first count of the complaint encompassed a finding that the defendant's termination of the plaintiff was justified by his unsatisfactory job performance. The verdict stands as a final determination of that factual issue. *Harry A. Finman & Son, Inc.* v. *Connecticut Truck & Trailer Service Co.,* supra, 411.

" 'Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action . . . .' " *Brockett* v. *Jensen,* 154 Conn. 328, 337, 225 A.2d 190 (1966), quoting Restatement (Judgments) (1942) § 68; accord *Scott* v. *Scott,* 190 Conn. 784, 787, 462 A.2d 1054 (1983). On a subsequent relitigation of the promissory estoppel claim, a jury would be bound by the finding that the defendant's alleged promise, not to terminate the plaintiff as long as his job performance was satisfactory, was fulfilled according to its terms.

Whatever the possible merits of the plaintiff's promissory estoppel claim on other grounds, therefore, our resolution of the defendant's claims on the first count

effectively would preclude the plaintiff from prevailing at a new trial on the second count. Accordingly, without addressing the Appellate Court's disposition of the merits of the plaintiff's appeal on the second count, we conclude that the court erred in ordering a new trial on that count.

The judgment of the Appellate Court is reversed and the case is remanded with direction to render judgment for the defendant.

In this opinion the other justices concurred.