[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
This case is before the court on defendant's motion for summary judgment as to counts one and two of the plaintiff's complaint. With respect to count one the defendant claims that there is no genuine issue of material fact as to whether the defendant's employee handbook created a contract between it and plaintiff and even if such contract existed, the defendant did not breach it.
As to count two, defendant's position is that the plaintiff has not alleged that the cause for his termination violated public policy.
On May 18, 1994, the plaintiff, Frank J. Wasilewski, filed an CT Page 5991 amended two count complaint, sounding in breach of contract and breach of the covenant of good faith and fair dealing, respectively, against the defendant, Warner-Lambert Company (Warner-Lambert). The plaintiff alleges that on or about April 1, 1963, he was hired by Schick Safety Razor Company (Schick), Milford, Connecticut. In 1970, Warner-Lambert acquired Schick, and following that acquisition, Warner-Lambert delivered an employee handbook[1], containing rules, regulations and policies of Warner-Lambert that governed the employer-employee relationship.
The plaintiff alleges that "[b]y and through its practices, writings, and policies as contained in the Employee Handbook, upon which plaintiff relied and for which he gave adequate consideration by continuing to work, [Warner-Lambert] created a contract with the plaintiff." The plaintiff alleges further, that his termination was a breach of Warner-Lambert's contractual obligations as represented in the handbook and in violation of the progressive discipline policy also set forth in the handbook.
Warner-Lambert filed an answer and special defense to the plaintiff's complaint on December 2, 1993,[2]. In its special defense, Warner-Lambert asserts that the "plaintiff has failed to state a claim upon which relief may be granted.[3]"
On December 21, 1994, Warner-Lambert filed a motion for summary judgment on both counts of the plaintiff's complaint. Warner-Lambert moves for summary judgment on the ground that there is no genuine issue of material fact as to either count and that Warner-Lambert is entitled to judgment as a matter of law on count one because its handbook did not create a contract between it and the plaintiff, and even if a contract were found to exist, Warner-Lambert did not breach it. Warner-Lambert moves for summary judgment on count two on the ground that the plaintiff has presented no evidence that the defendant violated public policy in terminating the plaintiff's employment or that the defendant acted in bad faith. In support of its motion, Warner-Lambert has submitted a memorandum of law, numerous exhibits including excerpts from certified and uncertified copies of deposition testimony, and a copy of its employee handbook.
On February 21, 1995, the plaintiff filed a memorandum of law and numerous exhibits in opposition to Warner-Lambert's motion for summary judgment. On February 27, 1995, Warner-Lambert filed a reply memorandum with additional exhibits. CT Page 5992
"Practice Book § 384 provides that summary judgment `shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Water Way Properties v. Colt's Mfg. Co., 230 Conn. 660,664, 646 A.2d 143 (1994). A party seeking summary judgment has the burden of showing the nonexistence of any material fact, while the party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of fact together with the evidence disclosing the existence of such an issue. Id.
Practice Book § 380 provides that "[a] motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified
transcripts of testimony under oath, disclosures, written admissions and the like." (Emphasis added.) "Uncertified copies of excerpts of deposition transcripts are not admissible as evidence and do not comply with the requirements of Practice Book § 380." Oberdick v. Allendale Mutual Insur. Co.,9 Conn. L. Rptr. 607, 608 (August 25, 1993) (Celotto, J.)
Count One
Warner-Lambert argues in support of its motion for summary judgment on count one that although an employee-at-will relationship may be altered by an employee handbook, its handbook contains a disclaimer sufficient to preclude a finding of a contract as a matter of law. Warner-Lambert further argues that even if its handbook constitutes a contract, under the terms of that "contract" it was permitted to terminate the plaintiff's employment based on his involvement in a time card punching scheme with a fellow employee in violation of the rules found in the handbook.
The plaintiff counters in opposition to Warner Lambert's motion for summary judgment on count one that under Connecticut law, the issue of whether a company handbook creates a contract is a question of fact for the jury. The plaintiff argues further that Warner-Lambert's alleged disclaimer is insufficient as a matter of law to disclaim its intention to be bound by the handbook's provisions and that Warner-Lambert violated promises found in the handbook to treat employees fairly, to respect seniority rights, not to discharge employees without cause and to follow the disciplinary policy set forth in the handbook. CT Page 5993
The general rule in Connecticut is that contracts of permanent employment, or for an indefinite term, are terminable at will.Coelho v. Posi Seal International, Inc., 208 Conn. 106, 118,544 A.2d 170 (1988). In Finley v. Aetna Life Casualty Co., 202 Conn. 190,198, 520 A.2d 208 (1987), however, the court stated that under appropriate circumstances statements in an employer's personnel manual "may give rise to an express or implied contract between employer and employee." The Finley court further noted that "[i]n the absence of `definitive contact language, . . . the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact.'" Id., 199, quoting Bead Chain Mfg. Co. v.Saxton Products, Inc., 183 Conn. 266, 274-75, 439 A.2d 314 (1981). The Finley court further noted that employers could protect themselves against employee contract claims based on statements made in personnel manuals `[b]y eschewing language that could reasonably be construed as a basis for a contractual promise, or by including appropriate disclaimers of the intention to contract." Id., n. 5
In the present case, the defendant argues that the final page of Warner-Lambert's employee handbook contains a disclaimer sufficient to defeat the plaintiff's claim of an implied contract. That page reads as follows:
 We hope that the preceding pages have given you a better understanding of Warner-Lambert, its history, its growth and the way we operate so that we can continue to be as successful in the future with your positive contributions.
 This handbook is not a guarantee of employment, it is intended only to highlight various company guidelines, practices and procedures. It is not to be considered the official company policy and practice manual.
 If you have any questions or comments on any of the subjects covered in this handbook or would like further information, please see your supervisor, who is truly concerned with your success as is everyone within Warner-Lambert.
(Defendant's Exhibit 2.)
The plaintiff, who argues that the final page of the handbook CT Page 5994 does not constitute a disclaimer, relies on a number of excerpts from the manual to establish an implied contract binding on both the company and its employees. For example, the plaintiff points to a portion of the handbook that provided for employee discipline procedures as follows:
 The following misconduct will subject an employee to discipline up to termination:
Falsifying or altering any company record.
 Consumption, possession or being under the influence of narcotics, marijuana, alcohol or any inhibiting or incapacitating substances while on company property.
Immoral conduct or indecency on company property.
 Theft, deliberate damage of company property or property belonging to other employees.
Refusal to obey a proper order of any supervisor.
 Possession of weapons or explosive within the facility.
 Leaving the company premises, during working time, without permission.
 Absent without permission or notification for 3 consecutive workdays.
Fighting on company premises.
 Disciplinary action of a progressive nature will be taken for unsatisfactory performance, failure to adhere to company policies, practices, instructions and behavioral standards under the Progressive Discipline Schedule as outlined on page 45. Some examples of situations which would result in disciplinary action are: violation of attendance, punctuality or safety standards, gambling on company premises, solicitation, distribution of written or printed matter, harassment of another employee on company premises and punching another employee's timecard.
CT Page 5995
 The above examples of serious misconduct or rule violations are not all inclusive. These and other rules will be discussed with you during your initial orientation and from time-to-time, either in group meetings or individually. The company reserves the right to determine misconduct and serious rule violations which may warrant deviation from the Progressive Discipline Schedule up to and including termination.
(Plaintiff's Exhibit 4, p. 44).
A number of superior court cases, in determining whether an appropriate disclaimer of the intention to contract exists in an employee handbook/manual as noted in Finley, supra, have considered such characteristics as the specificity of the disclaimer language, its location in the handbook, and the size of the print. See, e.g., Elliff v. H. Vincent's Medical Center, 10 Conn. L. Rptr. 507
(January 31, 1994) (Ford, J.) (alleged disclaimer, although stating it was not intended to create nor be construed to constitute a contract, was untitled, not referenced to in the manual's table of contents, placed on the last page in fine print and thus not an appropriate disclaimer); Dicker v. Middlesex Memorial Hospital,9 CSCR 413 (March 25, 1994) (Walsh, J.) (alleged disclaimer untitled, in fine print and on a signature page allegedly unsigned by the plaintiff found insufficient to defeat plaintiff's implied contract claim); contra, Markgraf v. Hospitality Equity Investors, Inc.,8 Conn. L. Rptr. 378 (February 18, 1993) (Fuller, J.) (handbook introduction stating "the contents of the handbook are presented as a matter of information only, and are not meant to be a contract. . ." held a sufficient disclaimer); Greco v. HartfordCourant Company, 8 CSCR 219 (January 27, 1993) (Aurigemma, J.) (first page of employee handbook stating, in part, "[t]he handbook and any of the statements made herein are not to be construed as nor is it a contract. . ." found to be an appropriate disclaimer).
The alleged disclaimer in the present case, similar to those found in the Elliff and Dicker cases, supra, is found on the last page of Warner-Lambert's employee handbook, is untitled and its language lacks the specificity found to be sufficient in theMarkgraf and Greco cases, supra. The Court finds that Warner-Lambert's alleged disclaimer is insufficient and thus a genuine issue of material fact remains as to whether Warner-Lambert's employee handbook gave rise to a contract between it and the plaintiff. CT Page 5996
Contrary to Warner-Lambert's argument that even if a contract based on the handbook were found to exist it could not be found to have breached that contract, a genuine issue of material fact exists as to whether there was a breach. In arguing that no breach could be found to have been made, Warner-Lambert relies on language from the handbook as justification for terminating the plaintiff's employment, the same handbook that it has argued does not constitute a contract. Specifically, Warner-Lambert refers to the handbook language stating that "[t]he company reserves the right to determine misconduct and serious rule violations that may warrant deviation from the Progressive Discipline Schedule up to and including termination" to support its argument. Warner-Lambert further relies on the uncertified deposition testimony of the plaintiff that he had violated company rules against punching another employee's timecard. It has been previously noted that uncertified copies of excerpts of deposition testimony do not comply with the requirements of Practice Book § 380; see Oberdickv. Allendale Mutual Insurance Co., supra; and, therefore, the court cannot rely on that testimony in deciding Warner-Lambert's motion for summary judgment. Furthermore, notwithstanding the language relied upon by Warner-Lambert, additional handbook language that states that "[s]ome examples of situations which would result in disciplinary action [of a progressive nature] are: . . . punching another employee's timecard," appearing on the same page as the language relied upon by Warner-Lambert, creates an ambiguity as to what procedures, if any, must be followed when an employee has been found to have been punching another employee's timecard. Therefore, the Court cannot find as a matter of law that no contract existed between Warner-Lambert and the plaintiff or that Warner-Lambert could not have breached any contract that may be found to exist. Warner-Lambert's motion for summary judgment on count one is therefore denied.
Count Two
Warner-Lambert has moved for summary judgment on count two of the plaintiff's complaint, which count alleges that Warner-Lambert's conduct in terminating the plaintiff constitutes a breach of its covenant of good faith and fair dealing. Warner-Lambert claims that it is entitled to judgment as a matter of law because the plaintiff has presented no evidence that Warner-Lambert violated public policy in terminating the plaintiff's employment or that it acted in bad faith.
The plaintiff argues in opposition that every contract, CT Page 5997 including implied employment contracts, contain an implied covenant obligating each party to act in good faith and fair dealing with obligating each party to act in good faith and fair dealing with the other in performance of the contract.
The Court agrees with the defendant that case law holds that in the context of an employment at-will relationship, an employee has no claim of wrongful discharge on the theory of breach of the implied covenant of good faith and fair dealing unless "the cause for dismissal is derived from some important violation of public policy." Magnan v. Anaconda Industries, Inc., 193 Conn. 558, 569,479 A.2d 781 (1984). Although the court in Magnan noted that other courts have sometimes found an implied promise to discharge only for cause in the circumstances of particular employment relationships, such as promises found in the representations contained in an employee manual or handbook, it declined "to adopt another emerging theory that limits the employer's right to discharge an at-will employee: the implied covenant of good faith and fair dealing." Id., 565.
In the present case, there has not been a determination, as a matter of law, that no implied contract between the plaintiff and Warner-Lambert exists. Such a determination would require this court to grant Warner-Lambert's motion for summary judgment on count two, because absent an implied contract the plaintiff's claim of wrongful discharge could only be based on a claim that the cause for dismissal is derived from an important violation of public policy, a claim that the plaintiff has not made.
In Paris v. Northeast Savings F.A., 11 Conn. L. Rptr. 575
(June 1, 1994) (Corradino, J.), the court denied a defendant defendant, in terminating the plaintiff, acted in bad faith and breached its duty of good faith and fair dealing. The court noted that although it had rejected the plaintiff's argument that an express contract of employment between the parties existed, it had also determined that an issue of fact remained as to whether an implied contract of employment was formed, which adopted the provisions of the employee manual providing for progressive discipline. The court then reasoned that a finding that a contract adopting progressive discipline existed would change the nature of the employment relationship at least with respect to termination procedures and thus obviate the need to plead and prove a violation of public policy. The court then held that its determination that a factual issue remained as to the reasonable expectations of the parties concerning termination procedures, or the lack thereof, was CT Page 5998 reason for the court to deny summary judgment. Id., 579, citingMunson v. United Technologies Corporation, 4 CSCR 748, 749
(September 6, 1989) (Hammer, J.).
This court is persuaded that Corradino, J.'s reasoning inParis, supra, should apply to the present case. Because this court believes that whether an implied contract of employment adopting the progressive discipline provisions of the Warner-Lambert employee handbook exists, is a question of fact for the trier, it cannot be said as matter of law that the plaintiff must plead a violation of public policy. The defendant's motion for summary judgment on count two is denied.
SKOLNICK, J.