[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION FOR PREJUDGEMENT REMEDY
The plaintiff has brought this multi-count suit against the defendant, claiming wrongful discharge inter alia. Five distinct theories have been briefed following a two day hearing. The order of their presentation in the amended complaint will be followed here. CT Page 3852
 I
BREACH OF CONTRACT
As the court understands this claim, it is based on the alleged statements made by the defendant Dennis May, president of the defendant Connecticut Hospital Association (hereinafter CHA), to the plaintiff to the effect that as long as he produced and didn't steal, he was assured of employment.
While the defendant May denies making the statements, the significant evidence on this issue is the employment application and the hiring letter, both signed by the plaintiff. The language in the former is relevant to this issue:
 "I understand that nothing contained in this employment application, or in oral statements made to me in connection with this application, or in oral statements made to me in connection with granting me an interview are intended to create a promise or contract of employment, express or implied, with the Connecticut Hospital Association and Affiliates (Association) and myself. I understand that employment with the Association is at-will, unless different terms are agreed to in writing by either the President of the Association or by an officer of the Association designated by the president for that purpose. I also agree that as an employee-at-will the Association will have the right to terminate my employment without notice and without cause at any time."
(Emphasis Added).
It is basic that in construing a contract, "the question is not what intentions existed in the minds of the parties but what intention is expressed in the language used." Ives v.Willimantic, 121 Conn. 408, 411 (1936).
As in Emanuele v. Boccaccio Susanin, Inc. 1994 WL 702923
(Conn.Super.) cited by the defendant, this plaintiff must prove the defendant had undertaken some form of actual contract commitment under which he could not be terminated without cause. CT Page 3853
That action must "constitute a definite promise upon which the employee could reasonably have relied" and it must "demonstrate a deliberate substitution of an employment policy which must be based on specific representations rather than expressions of intentions with respect to future employment."Kelly v. U.S. Shoe Corp., 1993 WL 46618 (Conn.Super.).
The court does not find the probable cause standard has been met on this count.
 II
PROMISSORY ESTOPPEL
The express language of the job application quoted in Section I above has a direct bearing on this claim. The plaintiff urges the court to find that this doctrine is applicable to him in that:
"Under a promissory estoppel theory, a party may maintain a claim for damages based upon a promise which induces the party's action or forbearance, if such action is undertaken in reasonable reliance upon the promise." Finley v. Aetna Life CasualtyCompany, 202 Conn. 190, 205, 520 A.2d 208 (1987).
However, as noted by the defendants where a written contract exists, promissory estoppel applies only where the contract cannot be enforced. When an enforceable contract does exist, the parties cannot assert a claim for promissory estoppel based on alleged promises that contradict the written contract. Lombardiv. Marketing Corp. of America, 1994 WL 24756, #2 (Conn.Super. 1994).
The plaintiff's claim that he was assured life employment is directly contradictory to the language noted above. Consequently, the court concludes promissory estoppel is not applicable to this case.
 III
INTENTIONAL MISREPRESENTATION
This count is directed at the defendants May and Berkowitz. What the plaintiff asks the court to do is to accept the language CT Page 3854 of another judge who heard a motion for summary judgment to substantiate this claim. In neither of his briefs, nor in the course of this two day hearing, did the plaintiff specify what these "misrepresentations" were.
Connecticut via our supreme court has adopted the definition of misrepresentation set forth in the Restatement (Second) of Torts:
 One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
D'Ulisse-Cupo v. Bd. of Directors, 202 Conn. 206, 218 (1987).
Implicit then is the obligation on the part of the plaintiff to prove false statements, his reliance thereon, and this reliance resulting in damages.
The plaintiff seems to focus on the status of his bonus as the basis for this claim. Examined in a light most favorable to the plaintiff, this evolved into an inability to agree on the size and extent of the bonus computation. There is no evidence that these defendants agreed to pay an amount and then refused. Rather, it was the perception of Mr. May that the plaintiff wanted to be a partner rather than an employee that precipitated the decision to enlist an outside consultant to evaluate his performance. The court finds no merit to this claim.
 IV
WRONGFUL TERMINATION
The plaintiff alleges he was wrongfully discharged from employment in violation of the public policy of the state, relying on the exception to the employment at-will doctrine recognized in Sheets v. Teddy's Frozen Foods, Inc.,179 Conn. 471, 477 (1980). The plaintiff's burden under this decision is to "prove a demonstrably improper reason for dismissal, a reason CT Page 3855 whose impropriety is derived from some important violation of public policy." Id., at 475.
The plaintiff offers a 26 paragraph recitation of events to support this claim. Many of these paragraphs are argumentative and many are irrelevant, but the court will address three areas in light of their possible public policy implications.
A. The plaintiff has alleged that the defendants violated the applicable law when they used his insurance broker's license as a "corporate credit card", allegedly using revenue generated by the insurance entity operated by the plaintiff to fund other programs of the defendant CHA.
This allegation remains just that, however, since no evidence was offered as to what actually occurred, what acts constituted the wrongdoing and who committed the acts.
The court cannot on the basis of mere accusations assume laws were violated and that these defendants or some of them were involved.
B. When the plaintiff testified about CHA taking commissions improperly, the court expected to hear details suggesting overt acts violating state law, complaints to regulators, disputes between the plaintiff and the defendants, etc. Instead, it was revealed on cross-examination that what might well have been a mistake occurred in May of 1991 and the funds in question were returned without incident. (The plaintiff wasn't fired until two years later). Again, no vital public policy issue has been identified.
C. When the plaintiff testified about the demise of the Mutual Benefit Life Insurance Company, he suggested that by their inaction, these defendants had been guilty of at least misfeasance for several years. Again on cross-examination, it was revealed that this company had been seized by the New Jersey Insurance Commissioner in July of 1991, dispelling the impression created by the plaintiff that he warned and advised defendants, they did nothing and then it was suddenly too late to remove money from the company. The plaintiff was employed by CHA in May 1991, the seizure in New Jersey was in July of the same year. Again, the court cannot speculate as to what these defendants are supposed to have done, nor conjure up theories of public policy violations in the absence of proof and law. CT Page 3856
D. The plaintiff was free with his suspicions and allegations, for he also accused two other CHA employees of "tampering with things's" involved in the insurance operation. These charges were never expanded upon and no evidence was offered about them. However, Mr. May testified that both of these employees were producing more revenue than was the plaintiff.
E. In testifying about the hiring, tenure and firing of the plaintiff, Mr. May described an individual who was good on sale but who couldn't work with others and who didn't follow through to finish up projects. Characterizing the plaintiff's status, Mr. May said he was not on probation "in the form we think of that," explaining he had reservations about the plaintiff. It was his feeling that the plaintiff was only in part responsible for the trust growth in 1992-1993. He also described the plaintiff as one who saw himself as an independent operator and not as an employee.
When the plaintiff's compensation proposal for himself struck May as making the plaintiff a partner rather than an employee, he decided to seek the assistance of an outside neutral consultant. When the report of the consultant confirmed many of Mr. May's concerns, the decision was made to fire the plaintiff. Actually, the report was devastating in that it found the plaintiff's contribution to the success of the CHA trust to be exaggerated and his attitude toward the CHA management to be one of disdain. The morale in the plaintiff's CHA unit was low and he seemed to breed disruption and contempt for authority.
When this compendium is contrasted with the evidence offered by the plaintiff on the issue of wrongful discharge, the court cannot find that the plaintiff has sustained his burden.
 V
UNJUST ENRICHMENT
The basic flaw in the plaintiff's argument on this count is that he had an express contract of employment and that contract did not provide for a bonus. When the parties did decide to discuss a bonus structure, they were unable to agree. This disagreement does not give rise to an unjust enrichment claim. "Unjust enrichment is a legal doctrine to be applied when no remedy is available pursuant to contract." A C Corp. v.CT Page 3857Pernaselci, 2 Conn. App. 264, 265 (1984); Burns v. Koellmer,11 Conn. App. 375, 387 (1987). At page 385 in Burns v. Koellmer, the court states:
 Unjust enrichment and quantum meruit are forms of the equitable remedy of restitution by which a plaintiff may recover the benefit conferred on a defendant in situations where no express contract has been entered into by the parties.
Though the plaintiff claims Burns, supra, to be "a perfect fit", it is not a "perfect fit" for this case. First of all, inBurns there was no written agreement; and the plaintiff there was seeking to recover the value of services already rendered. That is not the plaintiff's claim here.
The court finds no merit to this count sounding in unjust enrichment.
CONCLUSION
After reconsideration of the claims enunciated above and presented to the court during the two day hearing on the application for a prejudgment remedy, the court concludes that the evidence produced does not constitute probable cause as to any of the theories advanced. The application for prejudgment remedy, is therefore denied.
Anthony V. DeMayo Judge Trial Referee