[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
On July 25, 1997, Craig Esposito filed the present lawsuit against the defendants, Connecticut College and Claire Matthews, his employer and supervisor respectively, seeking damages arising out of his alleged wrongful demotion from the position of Director of Planned and Major CT Page 10794 Gifts to the position of Director of Planned Giving. The initial complaint consists of ten counts, seven directed against the college and three directed against the individual defendant.
Mr. Esposito was discharged from his employment on August 5, 1997. Although a revised complaint was filed on September 2, 1997, there are no counts alleging wrongful termination in that pleading. Count three of the revised complaint alleges retaliation, but the claimed retalitory actions consist of reducing the plaintiffs income and benefits because he filed a grievance with the college's Human Resources Department on April 15, 1997.
The plaintiffs first amended complaint, which is the operative complaint, was filed on November 17, 1997, and does contain two counts with allegations of wrongful termination. Count three alleges that the plaintiff was retaliated against, in violation of section 46a-60 (a) of the General Statutes, for filing grievances with his employer and for filing a complaint with the Attorney General of Connecticut seeking an investigation into the college's use of bequest funds. Count nine is titled "wrongful discharge" and claims the college terminated the plaintiff as a result of his whistle-blowing activities.
On January 7, 2000, the defendants moved for summary judgment on all fifteen counts of the plaintiffs first amended complaint. The plaintiff filed a withdrawal of count three of the operative complaint on March 23, 2000, the date of oral argument on this motion. The court now addresses the remaining fourteen counts.[1]
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . .It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Citations omitted; internal quotation marks omitted.) Home Ins. Co. v. Aetna Life Casualty Co.,235 Conn. 185, 202-203, 663 A.2d 1001 (1995). "A `material' fact has been defined adequately and simply as a fact which will make a difference in CT Page 10795 the result of the case." Catz v. Rubenstein, 201 Conn. 39, 48, 513 A.2d 98
(1986).
Count one is a claim for breach of an express contract directed against the college. It is alleged that the terms and conditions in the college's employee handbook constitute an express contract between the plaintiff and the college. In the briefs filed by the parties, and at the time of oral argument on this motion, references were made to various provisions contained in the 1994 handbook. The 1994 handbook, at page 6, provides that "[t]his handbook is not a contractual document." Further, language that the handbook is "informational rather than contractual" is found at page 7. At page 19 is the statement that "[n]othing in this handbook is intended as a contract of employment." Page 19 also contains the statement that "[w]e adhere to the principle of employment at will, which allows either party to terminate the employment relationship at any time." Finally, page 58 of the handbook includes the following statements: "All employment with the College is not for my specific period of time, but rather is considered to be at will. You may terminate your employment at any time, and the College may terminate your employment at any time for my legal purpose." The defendants claim these statements are contract disclaimers.
The plaintiff counters by referencing various general provisions in the 1994 handbook speaking to fair and equitable working conditions at the college and various alleged oral representations made by President Gaudiani concerning the college's obligation to treat its employees fairly and equitably. The plaintiff indicates that the college's written offer of employment to him in 1989 expressly states that employment is subject to the terms and conditions as set forth in the handbook. These written and oral statements, according to the plaintiff, constitute an express contract obligating the college to treat him fairly and equitably. The plaintiff contends that the contract disclaimers in the handbook are ineffective because of the inconspicuous location of the language, the failure to print them in bold face print and larger type, and the failure to reference them in the table of contents.
"If [an] agreement is shown by the direct words of the parties, spoken or written, the contract is said to be an express one." Boland v.Catalano, 202 Conn. 333, 336-337, 521 A.2d 142 (1987). "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact; (Citations omitted) "[w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law.' "(Citations omitted.) Levine v. Massey, 232 Conn. 272, 277-278,654 A.2d 737 (1995). CT Page 10796
Whether statements found in an employee handbook can be the basis for finding the existence of a contract between the employer and the employee is an issue which has been addressed in two Connecticut Supreme Court decisions. In Finley v. Aetna Life Casualty Co., 202 Conn. 190, 199 n. 5, 520 A.2d 208 (1987), the Court noted that "[b]y eschewing language that could reasonably be construed as a basis for a contractual promise, or by including appropriate disclaimers of the intention to contract, employers can protect themselves against employee contract claims based on statements made in personnel manuals."
In Gaudio v. Griffin Health Services Corporation, 249 Conn. 523, 535,733 A.2d 197 (1999), the Court revisited this issue.
 We have stated with unambiguous clarity that "employers can protect themselves against employee contract claims based on statements made in personnel manuals" by following either (or both) of two simple procedures: (1) "eschewing language that could reasonably be construed as a basis for a contractual promise"; and/or (2) "including appropriate disclaimers of the intention to contract. . . ." Finley v. Aetna Life Casualty Co., supra, 202 Conn. 199
n. 5.
The court finds as a matter of law that general statements made orally and in writing concerning fair and equitable working conditions and treatment of employees do not rise to the level of an express contract, particularly in light of the explicit contract disclaimers contained in the handbook. The statements in the employee handbook concerning at will employment and the absence of contract formation are sufficient disclaimers to preclude a valid claim for an express contract between the parties. The fact that the plaintiffs offer of employment provides that such employment is subject to the "terms and conditions" set forth in the handbook does not warrant a different conclusion. The "terms and conditions" include the express provisions that employment is "at will" and that the handbook is "informational rather than contractual." The defendants' motion for summary judgment is granted as to the first count of the plaintiffs first amended complaint.
Count four is a claim for fraudulent misrepresentation directed against the college. In his count, the plaintiff alleges that the defendant's oral and written representations were of acts relating to the conditions of plaintiffs employment; that said representations were untrue and known by the defendant to be untrue; that the representations were made for the purpose of inducing the plaintiff to use the grievance procedures; and that the plaintiff did in fact use the grievance procedures because of CT Page 10797 the representations. The count is fatally deficient, however, in that there are no allegations of any damage suffered by the plaintiff as a result of the alleged fraudulent misrepresentations, i.e., the plaintiff does not allege that he was terminated because he utilized the grievance procedure. The complaint is legally insufficient to state a cause of action for fraudulent misrepresentation against the college and, accordingly, the defendants' motion for summary judgment is granted as to count four of the first amended complaint.
Count eight is a claim for invasion of privacy directed against the college. It is alleged that the defendant violated section 31-128f of the General Statutes, which prohibits an employer's disclosure of information from an employee's personnel file, and that by doing so the college invaded the plaintiffs privacy. A review of the Personnel Files Act, Conn. Gen. Stat. Sections 31-128a, et seq., reveals no provision authorizing a private cause of "action for claimed violations. "When the legislature has authorized supplementary private causes of action, it has generally done so expressly." Middletown v. Hartford Electric Light Co.,192 Conn. 591, 596, 473 A.2d 787 (1984). Although there are no appellate decisions addressing this issue as it applies to this particular statute, there are two superior court decisions which this court finds to be persuasive. See Dais v. Laidlaw Transit, Inc., No. CV-95-01460798, 1996 WL 176370 (Conn.Super.); Turzer v. Connecticut National Bank, No. CV-91-02796715, 1991 WL 213529 (Conn.Super.). Judges Ryan and Spear, respectively, concluded that an individual does not have a private cause of action for a violation of this statute. This court agrees and grants the defendants' motion for summary judgment as to count eight of the first amended complaint.
Count nine is a claim for wrongful discharge directed against the college. The plaintiff alleges he was terminated for filing grievances with the college (internal whistle-blowing activities) and for filing the complaint with the Attorney General (external whistle-blowing activities). It is claimed that by terminating the plaintiff for these lawful whistle-blowing activities, the defendant has violated an important public policy of the state of Connecticut.
As recognized in the case of Sheets v. Teddy Frosted Foods, Inc.,179 Conn. 471, 427 A.2d 385 (1980), an employee terminable at will may bring a valid claim for wrongful discharge if his termination contravenes an important public policy. This constitutes a narrow exception to the traditional rules governing employment at will.
 Given the inherent vagueness of the concept of public policy, it is often difficult to define precisely the contours of the exception. Nevertheless, the plaintiff CT Page 10798 has not alleged that his discharge violated any explicit statutory or constitutional provision. Nor has he alleged that his dismissal contravened any judicially conceived notion of public policy.
Morris v. Hartford Courant Co., 200 Conn. 676, 680, 513 A.2d 66 (1986).
In the present case, the plaintiff cites no statutory or constitutional provision in this count which has been violated by his termination. He claims his filing of grievances with the college constitutes an internal whistle-blowing activity and that termination for doing so contravenes an important public policy of this state. This court finds as a matter of law that the Sheets public policy exception does not apply under these circumstances to the plaintiffs utilization of the grievance procedures as outlined in the handbook. Such activities do not implicate a public
policy nor do they rise to the level of importance mandated by this narrow exception.
With respect to the filing of the complaint with the Attorney General, the plaintiff specifically characterizes this action as a "whistle-blowing" activity. Section 31-51m of the General Statutes is a statutory remedy for persons wrongfully discharged for reporting a suspected violation of any state or federal law or regulation to a public body. Any employee discharged, disciplined or otherwise penalized by his employer for doing so may, after exhausting available administrative remedies, bring a civil action within 90 days of the date of the final administrative determination or within 90 days of such violation, whichever is later. Having an adequate statutory remedy, the plaintiff cannot bring a separate cause of action for wrongful discharge based upon his claimed whistle-blowing activities. See Atkins v. BridgeportHydraulic Co., 5 Conn. App. 643, 648, 501 A.2d 1223 (1985); Menard v.People's Bank, No. CV-97-05446275, 1998 WL 177536 (Conn.Super.).
If it is plaintiffs contention that this lawsuit constitutes the action filed under section 31-51m (there is no statutory reference in count nine), then plaintiff failed to file the claim within the requisite statutory time period. As previously noted, the plaintiff filed his lawsuit in July of 1997, prior to his discharge from employment on August 5, 1997. His revised complaint, filed on September 2, 1997, does not contain a count for wrongful discharge based upon the plaintiffs whistle-blowing activities. More than 90 days after his discharge, count nine of the operative complaint was filed on November 17, 1997. He had already exhausted his administrative remedies by filing grievances and receiving adverse decisions from the college prior to his termination on August 5, 1997. For this reason, the plaintiff had 90 days from August 5, 1997 to bring a claim pursuant to section 31-51m of the General CT Page 10799 Statutes. He did not do so. Having an adequate statutory remedy, he cannot now bring a common law Sheets action based upon his alleged whistle-blowing activities. Accordingly, the defendants' motion for summary judgment as to count nine of the first amended complaint is granted.
Counts eleven and fourteen are claims for intentional infliction of emotional distress directed against the college and the individual defendant, respectively. Four elements must be established in order for a plaintiff to prevail on such a claim: I) the defendant intended to inflict emotional distress or he knew or should have known that emotional distress was a likely result of his conduct; 2) the conduct was extreme and outrageous; 3) the defendant's conduct was the cause of the plaintiff's distress; and 4) the plaintiffs emotional distress was severe. Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986).
"Whether the defendant's conduct and the plaintiffs resulting distress are sufficient to satisfy [the elements outlined in Petyan v. Ellis, supra] is a question, in the first instance, for [the] court. Only when reasonable minds can differ does it become an issue for the jury. Reedv. Signode Corporation, 652 F. Sup. 129, 137 (D. Conn. 1986); 1 Restatement (Second), Torts sec. 46, comment (h) (issue of extreme and outrageous conduct) and comment (j) (issue of severe emotional distress)." Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17, 18-19,597 A.2d 846 (1991) (Berdon, J.). Conduct that is merely insulting or displays bad manners or results in hurt feelings is not sufficient to form the basis for an action based upon intentional infliction of emotional distress. Id., 19; Brown v. Ellis, 40 Conn. Sup. 165,484 A.2d 944 (1984) (McDonald, J.).
An examination of the affidavits and other documentation submitted by the plaintiff in opposition to this motion for summary judgment does not reveal actions amounting to the extreme and outrageous conduct necessary to support an action for intentional infliction of emotional distress. Although plaintiffs brief references certain actions claimed to constitute outrageous conduct, most of the referenced actions are not described in any of the submitted affidavits or in certified excerpts from depositions. Moreover, while the alleged conduct may have been unprofessional and insulting to the plaintiff, it does not rise, to the level of the extreme and outrageous conduct required for this cause of action. Furthermore, the plaintiffs submissions fail to indicate any symptoms or conditions suffered by plaintiff which would support the severe emotional distress alleged in his complaint. For these reasons, the court grants the defendants' motion for summary judgment as to counts eleven and fourteen of the first amended complaint. CT Page 10800
Count twelve is a claim for breach of the implied covenant of good faith and fair dealing directed against the college. Our Supreme Court discussed this cause of action at length in the case of Magnan v.Anaconda Industries, Inc., 193 Conn. 558, 572, 479 A.2d 781 (1984).
 Although we endorse the applicability of the good faith and fair dealing principle to employment contracts, its essence is the fulfillment of the reasonable expectations of the parties. Where employment is clearly terminable at will, a party cannot ordinarily be deemed to lack good faith in exercising this contractual right. Like other contract provisions, which are unenforceable when violative of public policy, the right to discharge at will is subject to the same restriction. We see no reason presently, therefore, to enlarge the circumstances under which an at-will employee may successfully challenge his dismissal beyond the situation where the reason for his discharge involves "impropriety . . . derived from some important violation of public policy." Sheets v. Teddy's Frosted Foods, Inc., supra, 475. Whether a claim resulting from such a discharge is framed in tort or in contract should make no difference with respect to the issue of liability.
Because this court has already determined that the allegations of this complaint do not support a public policy exception, the court grants the defendants' motion for summary judgment as to count twelve of the first amended complaint.
Count fifteen is a claim for aiding and abetting directed against the individual defendant. It is alleged that Ms. Matthews aided and abetted the college in breaching its contract with the plaintiff, negligently misrepresenting the terms of the plaintiffs employment to the plaintiff, and in wrongfully discharging the plaintiff. It is further claimed that Ms. Matthews' actions in aiding and abetting the college resulted in harm to the plaintiff.
"A common law claim for aiding and abetting a statutory violation or tort has been recognized by [our] Supreme Court in Carney v. DeWees, [136 Conn. 256, 262, 70 A.2d 142 (1949)], and approved in Slicer v.Quigley, 180 Conn. 252, 259 (1980) . . . [A] person is liable if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." Dudrow v. Ernst Young, LLP, No. X01-CV-98-0144211, 23 Conn.L.Rptr. No. 7, 225, 228 (Conn.Super. 1998) (Hodgson, J.). The CT Page 10801 plaintiffs operative complaint is devoid of such allegations and is, therefore, legally insufficient to state a cause of action for aiding and abetting against the individual defendant. Accordingly, the defendants' motion for summary judgment is granted as to count fifteen of the first amended complaint.
The court finds there are genuine issues as to material facts with respect to counts two, five, six, seven, ten and thirteen of the first amended complaint and therefore denies the defendants' motion for summary judgment as to those counts.
 Conclusion
The defendants' motion for summary judgment is granted as to counts one, four, eight, nine, eleven, twelve, fourteen and fifteen of the plaintiffs first amended complaint. The defendants' motion for summary judgment is denied as to counts two, five, six, seven, ten and thirteen of the plaintiffs first amended complaint.
Koletsky, J.