[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT SHORELINE CARE LTD. PARTNERSHIP'SMOTION FOR SUMMARY JUDGMENT (#124)
On June 29, 1994, the plaintiff, Stacey J. Smith, filed a four count revised complaint against the defendants, Shoreline Care Ltd. Partnership d/b/a Evergreen Woods (Shoreline), Sharon Zeintek, and Jean P. Kinard, seeking damages arising out of her termination of employment on or about August 30, 1993. The plaintiff alleges that she was employed by Shoreline as a housekeeper from March of 1992 until August 27, 1993. According to the plaintiff's revised complaint, on August 26, 1993, the plaintiff was cleaning a resident's room at Shoreline's facility in Branford, Connecticut when a pocketbook fell on the floor and CT Page 4010-XXXX partially "disgorged" its contents. While in the process of replacing the contents back into the pocketbook, the plaintiff claims she was confronted by Mary Murphy, a visitor and relative of the resident, who "immediately and without cause falsely accused the plaintiff of stealing the contents of the ladies pocketbook," and immediately thereafter "went to the plaintiff's supervisor and falsely complained that the plaintiff was engaging in the theft." Revised Complaint (First Count), ¶¶ 16 and 19. Despite the plaintiff's denial of any wrongdoing and attempts to explain the factual circumstances surrounding the above incident, the plaintiff received a State of Connecticut Department of Labor Unemployment Notice, commonly known as a "pink slip," in which the reason for termination was given as "inappropriate handling of resident valuables." Revised Complaint (First Count), ¶ 30. As a result of the defendant's conduct, the plaintiff alleges that she suffered financial loss and loss of benefits and now seeks to recover money damages, punitive damages, attorney's fees and costs.
In the first count, the plaintiff alleges that Shoreline's "Employee Handbook" creates "an implied contractual promise by the defendant that an employee, such as the plaintiff, could reasonably anticipate continued employment so long as she was performing her job in accordance with the policies and procedures set forth in its `Employee Handbook.'" Revised Complaint (First Count), ¶ 29. According to the plaintiff, the conduct of the defendant in terminating the plaintiff served to breach the implied contract and caused the plaintiff to suffer financial loss and loss of benefits due to her unemployment.
The second count is based on promissory estoppel. The plaintiff alleges that as a result of her reliance upon certain representations in the employee handbook, the defendant must be estopped from denying the existence of an express or implied contract between it and the plaintiff, and that said express or implied contract was breached by the summary termination of the plaintiff.
In the third count, which is based on misrepresentation, the plaintiff alleges that the representations contained in the employee handbook as set forth in paragraph nine of the first count were false, and that said representations "were made in the intention of inducing the plaintiff as an employee of the defendant to place her reliance thereon, all of which was to her detriment." Revised Complaint (Third Count), ¶¶ 30 and 31. The CT Page 4010-YYYY plaintiff claims that the false representations in the employee handbook were intentionally or negligently made, and that the plaintiff relied on said representations in accepting and continuing to maintain her employment with the defendant.
The fourth and final count is based on defamation. The plaintiff alleges that the wrongful accusations as made by Mary Murphy were repeated orally by Jean P. Kinard and Sharon Zeintek, employees of defendant Shoreline, on August 26, 1993. "As a consequence of the re-publication to members of the Defendant's Evergreen Woods staff," the plaintiff alleges that she suffered injury to her reputation and economic harm. Revised Complaint (Fourth Count), ¶ 23.
On August 26, 1994, the defendant filed an answer with special defenses. The defendant denied the relevant allegation in counts one, three and four of the revised complaint, and did not reply to the second count because it had been stricken by the court, Hodgson, J., on August 8, 1994, pursuant to the defendant's motion to strike. In its affirmative defenses, the defendant claims: 1) that the plaintiff's damages, if any, were caused in whole or in part by her own culpable conduct and 2) that the plaintiff has failed to mitigate her damages, if any.
On January 23, 1996, the defendant filed a motion for summary judgment as to all counts of the revised complaint. In support of this motion, the defendant submitted a memorandum of law along with a copy of the plaintiff's original complaint (Exhibit A), a copy of the defendant's answer (Exhibit B), a copy of the plaintiff's application for employment (Exhibit C), a copy of the employee handbook (Exhibit D) (odd pages only), and an uncertified copy of an excerpt from the plaintiff's deposition. The plaintiff filed an objection to the defendant's motion on February 23, 1996. Although the plaintiff filed an opposing memorandum of law, no affidavits or other documentary evidence were submitted in opposition to the motion for summary judgment.
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a CT Page 4010-ZZZZ party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Citation omitted; internal quotation marks omitted.)Home Ins. Co. v. Aetna Life Casualty Co., 235 Conn. 185, 202,663 A.2d 1001 (1995).
I. Implied Contract (First Count)
The defendant argues in its supporting memorandum that the disclaimers in both the employee handbook and the plaintiff's employment application establish, as a matter of law, that the plaintiff was an employee at will. Defendant's Memorandum of Law, p. 6, quoting Employment Application, Exhibit C ("I understand that my employment can be terminated at any time and for any reason, at the option of either the facility or myself."). According to the defendant, the employee handbook states: "Evergreen Woods does not provide written or oral employment contracts to employees. This means that both Evergreen Woods and the employee retain the right to terminate the employment relationship at any time for any reason." Defendant's Memorandum, p. 7, quoting Employee Handbook, Exhibit D, p. 17. The defendant claims that the disclaimer in Shoreline's employee handbook is clearer and more explicit than those held appropriate by other superior courts and is of the precise type which the court inFinley v. Aetna Life Casualty Co., 202 Conn. 190, 199 n. 5,520 A.2d 208 (1987), recognized employers must be allowed to use to protect themselves. Defendant's Memorandum, p. 9.
Second, the defendant argues that in order to prevail on a claim for breach of implied contract, "the plaintiff must prove that the Employment Handbook contained language that could reasonably be construed as a basis for a contractual promise." Defendant's Memorandum, p. 10. According to the defendant, "Connecticut courts have refused to find an implied employment contract based on an Employee Handbook where the defendant-employer has, in the same document, disclaimed that it is a contract or where the plaintiff cannot establish that an actual agreement existed." Defendant's Memorandum, p. 11. The defendant contends that the vague statements on which the plaintiff seeks to premise her breach of contract claim were insufficient, as a matter of law, to create a contract, and that the express provision in the plaintiff's employment contract precludes a finding that the defendant intended to be bound to an implied contract of employment pursuant to which it could only terminate CT Page 4010-AAAAA the plaintiff for cause.
In her opposing memorandum, the plaintiff argues that the provision in the employee handbook in which the employer and employee "retain the right to terminate the employment relationship at any time for any reason," requires the employer to have a reason for termination. According to the plaintiff, "any reason" means "for any good or bona fide reason"; Plaintiff's Memorandum, p. 4, citing In re Campbell's Estate,55 N.E.2d 588, 593 (Ohio App. 1943); and a statement of the reason or reasons for a layoff "must be a full and fair answer to the question of why the layoff was made." Plaintiff's Memorandum, p. 4, citing Hunt v. Personnel Commission, 115 N.H. 713,349 A.2d 605, 607 (1975). Accordingly, the plaintiff argues that the provision in the handbook, as well as a similar provision in the application for employment, supports a fair inference that the plaintiff will not be terminated except for a "reason." Furthermore, the plaintiff argues that a genuine issue of material fact exists as to whether the provisions in the handbook constitute a disclaimer and whether these provisions "give rise to a contract between the plaintiff and the defendant (to the effect that plaintiff can not be terminated except for a valid reason. . . .)." Plaintiff's Memorandum, p. 5.
The general rule in Connecticut is that "contracts of permanent employment, or for an indefinite term, are terminable at will." (Internal quotation marks omitted.) Coelho v. Posi-SealInternational, Inc., 208 Conn. 106, 118, 544 A.2d 170 (1988). Unless a contract for employment is "for a definite or determinable duration, it is terminable at the will of either party at any time and for any reason not involving `impropriety . . . derived from some important violation of public policy.'" (Emphasis added.) Slifkin v. Condec Corp.,13 Conn. App. 538, 548, 538 A.2d 231 (1988), quoting Magnan v.Anaconda Industries, Inc., 193 Conn. 558, 572, 479 A.2d 781
(1984). Thus, even "[a] false but negligently made accusation of criminal conduct as a basis for dismissal is not a `demonstrably improper reason for dismissal.'" (Emphasis in original.) Morrisv. Hartford Courant Co., 200 Conn. 676, 680, 513 A.2d 66 (1986).
In order to prevail on a claim for breach of an implied employment contract, the plaintiff has the burden of proving by a fair preponderance of the evidence that the defendant "agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment" to the plaintiff under which "[s]he CT Page 4010-BBBBB could not be terminated without just cause." (Internal quotation marks omitted.) Coelho v. Posi-Seal International, Inc., supra,208 Conn. 112. "A contract implied in fact, like an express contract, depends on actual agreement." (Internal quotation marks omitted.) Id., 111. "The intention of the parties manifested by their words and acts is essential to determine whether a contract was entered into and what its terms were." (Internal quotation marks omitted.) Finley v. Aetna Life Casualty Co., 202 Conn. 190,199, 520 A.2d 208 (1987), overruled on other grounds byCurry v. Burns, 225 Conn. 782, 789, 626 A.2d 719 (1993).
The plaintiff essentially relies on the following provision from the employee handbook to establish her claim for breach of an implied contract under which she could not be terminated except for cause: "The employment relationship between our organization and its employees is predicated upon a commitment to maintain employment practices which encourage staff retention and which promote a positive and productive work environment." Revised Complaint (First Count), ¶ 9. While the Connecticut Supreme Court has recognized that, "under appropriate circumstances, the terms of an employment manual may give rise to an express or implied contract between employer and employee . . . in the absence of definitive contractual language, the question of whether the parties intended the manual to constitute part of the contract is a question of fact to be determined by the trier of fact." (Citations omitted.) Carbone v.Atlantic Richfield Co., 204 Conn. 460, 471-72, 528 A.2d 1137
(1987). Nevertheless, the court in Finely v. Aetna Life Casualty Co. held that employers can protect themselves against employee contract claims based on statements made in personnel manuals "[b]y eschewing language that could reasonably be construed as a basis for a contractual promise, or by including appropriate disclaimers of the intention to contract." Finley v.Aetna Life Casualty Co., supra, 202 Conn. 199 n. 5.
"A number of Superior Court cases, in determining whether an appropriate disclaimer of the intention to contract exists in an employee handbook/manual as noted in Finley, supra, have considered such characteristics as the specificity of the disclaimer language, its location in the handbook, and the size of the print."Wasilewski v. Warner-Lambert Co., Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 044445 (June 19, 1995, Skolnick, J., 14 Conn. L. Rptr. 423, 425) (holding that an untitled disclaimer located on the last page of an employee handbook is insufficient to defeat a claim that the handbook CT Page 4010-CCCCC created an implied employment contract). On several occasions courts have granted summary judgment based on disclaimers that contained explicit language stating that the handbook was not a contract. See Markgraf v. Hospitality Equity Investors, Inc.,
Superior Court, judicial district of Danbury at Danbury, Docket No. 308501 (February 18, 1993, Fuller, J., 8 Conn. L. Rptr. 378) (handbook introduction stating that "[t]he contents of the handbook are presented as a matter of information only, and are not meant to be a contract" held a sufficient disclaimer); Griecov. Hartford Courant Co., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 372593 (January 27, 1993, Aurigemma, J., 8 CSCR 219) (first page of employee handbook stating, in part, "[t]he handbook and any of the statements made herein are not to be construed as nor is it a contract" found to be an appropriate disclaimer). See also Lombardi v. MarketingCorp. of America, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 293281 (May 23, 1994, Moran, J.) (disclaimer contained "definitive contractual language that the provisions of the employee handbook are not contractual provisions," and the disclaimer protected the defendant "from any claims of contract based on the employee handbook").
In the present case, the provision in the employee handbook on which the plaintiff relies is directly preceded by the following language: "Evergreen Woods does not provide written or oral employment contracts to employees. This means that both Evergreen Woods and the employee retain the right to terminate the employment relationship at any time for any reason." Defendant's Exhibit D, p. 17. In addition, the first page of the employee handbook provides: "This Handbook is a living changing document. It is neither a comprehensive treatment of personnel issues, nor is it an employment contract. It is not a guarantee of continued employment." Defendant's Exhibit D, p. 1. The plaintiff signed a statement acknowledging that she read the employee handbook and understood its contents. Furthermore, on the signature page of the employment application, which was also signed by the plaintiff, the following provision appears: "I understand that my employment can be terminated at any time and for any reason, at the option of either the facility or myself. I understand that no one has any authority to enter into any agreement for employment for any specified period of time or to make any agreement contrary to the foregoing, except for a written employment agreement signed by an administrative representative of this facility." Defendant's Exhibit C. CT Page 4010-DDDDD
The defendant, in drafting the employee handbook, avoided "language that could reasonably be construed as a basis for a contractual promise" and included appropriate disclaimers of the intention to contract in accordance with Finley v. Aetna Life Casualty Co. See Finley v. Aetna Life Casualty Co., supra,202 Conn. 199 n. 5. "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Citations omitted; internal quotation marks omitted.) Levine v. Massey,232 Conn. 272, 277-78, 654 A.2d 737 (1995). "A contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties." Christensen v.Bic Corp., 18 Conn. App. 451, 458, 558 A.2d 273 (1989). "The mere fact that the plaintiff believed the guidelines to constitute a contract does not bind [Shoreline] without some evidence that it intended to be bound to such a contract." Id.
Although the language in the handbook is not entitled "disclaimer," it definitively states that the handbook is not a contract, the disclaimer language appears on both the first and seventeenth pages of the handbook, and it is in normal size print. See Wasilewski v. Warner-Lambert Co., supra,14 Conn. L. Rptr. 425. Therefore, the employee handbook contains an appropriate disclaimer whereby the terms of the handbook do not give rise to an express or implied contract between the plaintiff and the defendant. Thus the plaintiff's employment was terminable at the will of either party at any time and for any reason not involving "impropriety . . . derived from some important violation of public policy." (Internal quotation marks omitted.)Magnan v. Anaconda Industries, Inc., supra, 193 Conn. 572. Accordingly, the defendant's motion for summary judgment is granted as to the plaintiff's claim for breach of implied contract in the first count of the revised complaint.
II. Promissory Estoppel (Second Count)
Promissory estoppel is defined as "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance. . . . [I]t is binding if injustice can be avoided only by enforcement of the promise." Restatement (Second), Contracts § 90 (1973). "A fundamental element of promissory estoppel, therefore, is the existence of a CT Page 4010-EEEEE clear and definite promise which a promisor could reasonably have expected to induce reliance." D'Ulisse-Cupo v. Board of Directorsof Notre Dame High School, 202 Conn. 206, 213, 520 A.2d 217
(1987) (school principal's assurances that non-tenured teacher would be rehired the following year held "neither sufficiently promissory nor sufficiently definite" to support a claim of promissory estoppel). "Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all." Id.
The defendant argues that the alleged representations in the employee handbook are neither sufficiently promissory nor sufficiently definite to support a claim for promissory estoppel and that Shoreline could not reasonably have expected these representations to induce reliance on the part of the plaintiff. Defendant's Memorandum, p. 13-14, citing D'Ulisse-Cupo v. Boardof Directors of Notre Dame High School, supra, 202 Conn. 213. According to the defendant, the provisions in the employee handbook and the employment application to the effect that the plaintiff could be terminated at any time for any reason, "establish, as a matter of law, that the defendant did not, and could not, reasonably expect that the plaintiff would rely on statements in the manual as promising a contract of employment." Defendant's Memorandum, p. 16.
In her opposing memorandum, the plaintiff argues that the meaning and effect of the "disclaimer" language relied upon by the defendant is an issue of fact which can only be determined by the trier of fact.
On July 13, 1994, the defendant filed a motion to strike (#104) the plaintiff's promissory estoppel claim in the second count of the revised complaint. The defendant's motion was granted by the court, Hodgson, J., on August 8, 1994, on the ground that "[t]he handbook section involved does not provide [a] sufficiently clear and definite promise as to the situation at issue to give rise to promissory estoppel." In reaching this conclusion, the court relied on D'Ulisse-Cupo v. Board ofDirectors of Notre Dame High School, supra, 202 Conn. 213-14. Rather than file a substitute pleading, the plaintiff chose to reserve her right to appeal this decision pursuant to Practice Book § 4002. Because the second count of the plaintiff's revised complaint was stricken pursuant to the defendant's previous motion to strike, this court need not address the second count on the defendant's current motion for summary judgment. CT Page 4010-FFFFF
III. Misrepresentation (Third Count)
According to the defendant, "[i]n order to maintain an action for misrepresentation, the plaintiff must establish that (1) there was a false representation of fact and (2) there was sufficient evidence of reliance on the representation." Defendant's Memorandum, p. 16-17, citing D'Ulisse-Cupo v. Boardof Directors of Notre Dame High School, supra, 202 Conn. 206. The defendant argues that the plaintiff in this case has not, and cannot, introduce any evidence which demonstrates that the terms of the employee handbook, which provide that the employment relationship was "predicated upon a commitment to maintain employment practices which encourage staff retention and promote a positive and productive work environment," were false and, consequently, argues that the plaintiff cannot establish a cause of action for misrepresentation.
In her opposing memorandum, the plaintiff argues that the defendant is precluded from obtaining summary judgment on the misrepresentation claim because "the falsity of the representation that the plaintiff would not be fired but for a `reason' is replete with issues of fact." Plaintiff's Memorandum, p. 6. In addition, the plaintiff argues that the question of whether she justifiably relied on the representations also creates an issue of fact.
Connecticut recognizes a cause of action for negligent misrepresentation in an employment setting where an employer fails "to exercise reasonable care in making representations to an employee on which the employee relied to his detriment."D'Ulisse-Cupo v. Board of Directors, supra, 202 Conn. 219-20 (plaintiff's allegation that "`[t]he defendants negligently misrepresented the facts to the plaintiff, causing her damages as pled,'" sufficiently stated a cause of action for negligent misrepresentation). The tort of negligent misrepresentation has been defined as follows: "One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Id., 218, quoting 3 Restatement (Second), Torts § 552 (1979). "[E]ven an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, CT Page 4010-GGGGG ought to know, or has the duty of knowing the truth." (Internal quotation marks omitted.) Id., 217. "[T]he plaintiff need not prove that the representations made by the [defendant] were promissory. It is sufficient . . . that the representations contained false information"; id., 218; and that the plaintiff relied thereon. Williams Ford, Inc. v. Hartford Courant Co.,232 Conn. 559, 579-80, 657 A.2d 212 (1995).
A remedy for negligent misrepresentation is considered to be independent of a remedy on a contract. Williams Ford, Inc. v.Hartford Courant Co., supra, 232 Conn. 579. Thus, a defendant who is not liable for representations based on promissory estoppel can, nonetheless, be liable in tort for negligent misrepresentation. D'Ulisse-Cupo v. Board of Directors of NotreDame High School, supra, 202 Conn. 218-19.
The plaintiff alleges in the third count that representations in the employee handbook were false and that she justifiably relied upon this information in accepting and continuing her employment, all of which was to her detriment. "Whether evidence supports a claim of fraudulent or negligent misrepresentation is a question of fact." McClintock v. Rivard, 219 Conn. 417, 427,593 A.2d 1375 (1991). Accordingly, a genuine issue of material fact exists as to whether the evidence supports the plaintiffs claim for misrepresentation, and, therefore, the defendant's motion for summary judgment as to the third count is denied.
IV. Defamation (Fourth Count)
The defendant argues that, as a matter of law, the plaintiff cannot prevail on her defamation claim because the allegedly defamatory statements made by the defendant were not published and are privileged. According to the defendant, "in a corporate world, allegedly false statements must be disseminated outside of the corporation in order to be defamatory." Defendant's Memorandum, p. 18, citing L. Cohen Co., Inc. v. Dun Bradstreet, Inc., 629 F. Sup. 1425, 1427 (D.Conn. 1986). Because the plaintiff has not alleged that the defamatory statements were published to persons other than Shoreline's employees, the defendant argues that the plaintiff's defamation claim must be dismissed.
In addition, the defendant argues that an employer's submission of a "pink slip" to the State Unemployment Office cannot constitute publication for purposes of a defamation claim. CT Page 4010-HHHHH Defendant's Memorandum, p. 19, citing Petyan v. Ellis, 200 Conn. 243,247, 510 A.2d 1337 (1986) ("an employer who discharges an employee has an absolute privilege when supplying information necessary for the `unemployment notice' required by regulation"). Moreover, the defendant argues that Connecticut courts have held that the contents of these slips are absolutely privileged and cannot provide the basis for a defamation claim.
Finally, the defendant argues that "[s]tatements regarding an employee's performance or character may be protected by qualified privilege if the defendant can prove: (1) an interest to be upheld; (2) a statement limited in its scope to this purpose; (3) good faith; (4) a proper occasion; and; (5) a publication in a proper manner to proper parties only." Defendant's Memorandum, p. 20, citing Miles v. Perry, 11 Conn. App. 584, 595, 529 A.2d 199
(1987). According to the defendant, whether its statements were made while acting within a qualified privilege is a matter of law to be decided by the court. Defendant's Memorandum, p. 20. Because the statements allegedly made by the defendant to Shoreline employees were made in the course of investigating allegations of theft, the defendant argues that it is protected by qualified privilege against a claim for defamation.
In her opposing memorandum, the plaintiff argues that a genuine issue of material fact remains as to whether a legally sufficient publication of the statements was made and, further, that all the elements of a claim of qualified privilege entail issues of fact precluding summary judgment.
Despite the defendant's claim to the contrary, the court inTorosyan v. Boehringer Ingelheim Pharmaceuticals, Inc. rejected the view that intracorporate communications do not constitute "publication" of a defamatory statement. Torosyan v. BoehringerIngelheim Pharmaceuticals, Inc., 234 Conn. 1, 27-28, 662 A.2d 89
(1995) (there was sufficient evidence of publication where defamatory statements were communicated among plaintiff's supervisors and included in his personnel file). In the fourth count, the plaintiff alleges that false and wrongful accusations were re-published to members of Shoreline's staff. Revised Complaint (Fourth Count), ¶ 23. Accordingly, because intracorporate communications may constitute publication, the defendant's argument based on lack of publication must fail.
To establish the defense of a conditional or qualified privilege, a defendant must sufficiently prove five essential CT Page 4010-IIIII elements, including: "(1) an interest to be upheld, (2) a statement limited in scope to this purpose, (3) good faith, (4) a proper occasion, and (5) a publication in a proper manner to proper parties only." Miles v. Perry, supra, 11 Conn. App. 595. "It is for the court to determine, as a matter of law, whether the defendant made the defamatory statements while acting on an occasion of privilege, as in the bona fide discharge of a public or private duty. . . . It is a question of fact for a court or a jury, however, to determine whether the defendant has abused a conditional privilege." (Citation omitted.) Id., 594 n. 8.
"A conditional or qualified privilege may be abused or lost if the defendant published or broadcast the defamatory remarks with malice, improper motive, or bad faith." Id. Thus, "[e]ven when a legitimate interest is at stake, a claim of conditional privilege is defeated if the defendant acts with malice in making the defamatory communication at issue. For purposes of our law of defamation, malice is not restricted to hatred, spite or ill will against a plaintiff, but includes any improper or unjustifiable motive." Bleich v. Ortiz, 196 Conn. 498, 504, 493 A.2d 236
(1985). "An assertion of conditional privilege also fails if the defamatory communication is addressed to a party whose knowledge of the matter is not reasonably believed to be necessary to protect the defendant's interest or if the content of the publication is excessive." Id.
"Privilege is an affirmative defense in a defamation action and must, therefore, be specially pleaded by the defendant."Miles v. Perry, supra, 11 Conn. App. 594 n. 8. The defendant failed to raise privilege as an affirmative defense in its answer. "[T]he failure to raise a special defense is waived [however] when evidence comes in without objection." Thompson Peck, Inc. v. Harbor Marine Contracting Corp., 203 Conn. 123,132, 523 A.2d 1266 (1987). In the present case, the plaintiff has not objected to the defendant's failure to raise privilege as a special defense in its answer. Accordingly, the plaintiff waived any objection by failing to object to the defendant's privilege argument in her opposition to the motion for summary judgment.
The plaintiff in the present case alleges in the fourth count of the revised complaint that she suffered injury to her reputation and economic harm "[a]s a consequence of the re-publication to members of Defendant's Evergreen Woods staff . . . of the aforesaid false and wrongful accusation . . . which was made in reckless disregard of the circumstances and the truth orCT Page 4010-JJJJJfalsity." (Emphasis added.) Revised Complaint (Fourth Count), ¶ 23. "A reckless disregard of the truth or falsity of facts . . . would amount to bad faith." Charles Parker Co. v.Silver City Crystal Co., 142 Conn. 605, 618, 116 A.2d 440 (1955). The determination of whether a defendant abused a conditional privilege due to bad faith is a question of fact for the jury.Miles v. Perry, supra, 11 Conn. App. 594 n. 8. Furthermore, the defendant has failed to sufficiently prove each of the five essential elements of the defense of conditional or qualified privilege by submitting appropriate documentary evidence such as "affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like." Practice Book § 380. Instead, the defendant, in its supporting memorandum, merely states in conclusory fashion that each of the five elements have been satisfied. Therefore, the defendant failed to prove its claim of qualified privilege, and that even if these statements were privileged, a genuine issue of material fact exists as to whether the privilege was abused or lost. Accordingly, the motion for summary judgment as to the fourth count of the plaintiff's revised complaint is denied.
Based on the foregoing, the defendant's motion for summary judgment is granted as to the first count of the revised complaint and denied as to the third and fourth counts. Because the second count was stricken pursuant to the defendant's prior motion to strike, the court need not address the second count on the present motion.
Licari, J.